[No. 18121.   Department Two.   February 4, 1924.]

INLAND EMPIRE RAILROAD COMPANY, *Respondent*, v. WHITMAN COUNTY *et al., Appellants*.[1]

JUDGMENT (195, 198) — CONCLUSIVENESS — PERSONS CONCLUDED — IDENTITY — PERSONS PARTICIPATING.  A judgment reducing the assessment of a railroad company's property in Spokane county, as equalized by the state board of equalization for the year 1919, is not *res judicata* and conclusive against Whitman county, in a subsequent action to reduce the assessment for that year in that county, where neither the tax commission or board of equalization or the state were made parties to the former action, and the attorney general's appearance therein may have been only as an assistant to the prosecuting attorney of Spokane county.

TAXATION   (210) — EXCESSIVE   ASSESSMENT — EVIDENCE — SUFFICIENCY.  Where a railroad company's property had greatly depreciated, it was operated at a loss, and its assets were not worth to exceed its salvage value of $3,174,000, and there was evidence that there was no prospect of its ever earning operating expenses and taxes, an assessment on a valuation of $3,870,000 because it was still being operated is excessive.

Appeal from a judgment of the superior court for Whitman county, Honorable George Turner, judge pro tempore, entered January 6, 1923, upon findings in favor of the plaintiff, in an action to secure a reduction of taxes.   Affirmed.

*W. L. LaFollette, Jr.*, and *S. R. Clegg*, for appellants.

*Graves, Kizer & Graves*, for respondent.

[1] Reported in 223 Pac. 6.

MITCHELL, J.—This is a suit for the reduction of taxes on plaintiff's property for the years 1919 and 1920. Prior to the year 1919, the Spokane & Inland Empire Railroad Company owned an electric railway system, one branch of which runs easterly from Spokane into Idaho, and another branch runs southerly from that city through Whitman county, thence into Idaho. It became insolvent in 1918 and was placed in the hands of a receiver who, by directions of the court, sold the entire property in 1919 at a public sale to the bondholders, at whose suit the receiver had been appointed. Upon confirmation of the sale, the purchasers conveyed to the plaintiff in this action, the Inland Empire Railroad Company, the line running southerly from Spokane into and through Whitman county, and some rolling stock. The remainder of the property was conveyed to the Spokane & Eastern Railway & Power Company. The assessment and equalization for 1919 were made of the property as a whole, while for the year 1920, assessments and equalization were made against each of the two corporations for the property as it was then owned. The taxes levied not being paid, the plaintiff herein and the Spokane & Eastern Railway & Power Company began separate actions in the superior court of Spokane county against the county and its treasurer for the cancellation of taxes payable in that county over and above amounts they alleged to be justly due. Those two actions were consolidated for trial, and in the trial of them the *Attorney General* of the state took part on behalf of the defendants and in opposition to the plaintiffs. That trial resulted in judgments that the taxes levied for those years were excessive and illegally imposed, and should be canceled upon the payment of much smaller amounts, that were found to be justly due. No appeal was taken in either of those cases. The amounts of

the taxes as fixed by the judgments were paid and accepted and the taxes appearing on the rolls were canceled.

Pending the disposition of those cases in Spokane county, the present case was brought in Whitman county for similar relief against the taxes for 1919 and 1920 upon plaintiff's property in that county. Before the trial in this case took place, a supplemental complaint was filed herein, by leave of court, setting up the decision in the Spokane county cases and alleging that the defendants therein had accepted the amounts fixed by the judgments and had canceled the taxes of record. It was further alleged in the supplemental complaint that the *Attorney General* appeared in those cases on behalf of the defendants therein and for the state tax commissioner and board of equalization, that the issues there litigated were the same as those involved in the present action, and that therefore the judgments in those cases were *res adjudicata* of the invalidity of the assessments involved in the present action.

The defendants herein plead that the matters set up in the supplemental complaint were irrelevant and did not constitute any cause of action. By a stipulation, it was then agreed that this action should be tried by the same judge who heard the Spokane county cases, and upon the evidence that was introduced in those cases. This case was so tried. The demurrer to the supplemental complaint was overruled. Thereupon the evidence in the Spokane county cases was introduced and both sides rested. Judgment was rendered for the plaintiff reducing the taxes to an amount a little more than one-half of those assessed, following the rule of decision that was established in the Spokane county cases. The trial judge did not determine whether any effect should be given to the supplemental

complaint, finding it unnecessary for him to do so because of his views of the evidence.    The defendants not being satisfied with the judgment, have taken an appeal.

It is contended by the respondent, in support of the judgment, that the matter set up in the supplemental complaint, being admitted, for the want of a denial, is conclusive of this controversy.    Tersely stated, the argument is that, as the assessments in question were made by the state tax commissioner and equalized by the state board of equalization, and as the *Attorney General* appeared in the trial of the cases in Spokane county on behalf of the commissioner and board of equalization, that therefore the judgments in those cases are conclusive upon the state in all subsequent litigation regarding the legality of those assessments and it therefore includes Whitman county which claims through and in privity with the state.  It would appear as if the relations and the duties of the state tax commissioner and the state board of equalization with respect to the taxes involved in the Spokane county cases had ceased prior to the time those suits were instituted, but certain it is that in those cases there was no service upon or appearance by either the tax commissioner, the board of equalization or the state.    Neither of them was made a party to the actions nor did the *Attorney General,* for aught that appears in the record, appear on behalf of them or either of them, but only in the capacity of assisting the county attorney of Spokane county in representing the defendants that were named in those cases.  We conclude, therefore, that the supplemental complaint stated no facts which precluded Whitman county from litigating the issues made by the original complaint and the answer in this case.

Upon the other or main branch of the case, this property in 1919 and 1920 was very nearly in a condition similiar to that of the First Thought Gold Mine described in its case against Stevens county, reported in 91 Wash. 437, 157 Pac. 1080, as follows:

"The evidence is overwhelming that the vein or lode of paying ore has either been completely exhausted or is so hopelessly lost as to make the property not an operating mine but a mere prospect."

From the testimony in this case, that is not disputed, this electric railroad property was operated at a loss in 1918, counting only operating expenses and taxes and excluding interest on the investment. It was not much better in 1919. In 1920 after the whole property was divided this particular property earned only $1,761 and in 1921 it sustained a net loss of a very considerable amount. It clearly appears that, as early as 1918, the value of the whole property had been greatly destroyed by paved roads and the auto bus and truck business, the effect of which kind of business on local transportation generally in this state is referred to in the dissenting opinion in *Asia v. Seattle,* 119 Wash. 674, 206 Pac. 366.

There is very substantial evidence that this property, during the years mentioned, was not worth to exceed its salvage value of $3,174,000, upon the practical theory as explained in *State v. Central Pac. R. Co.,* 10 Nev. 47.

"If the road does not pay current expenses, and cannot be expected to do so, then it is worth no more than the value of its movable material, less the cost of taking it up and getting it to market."

The trial judge, however, rejected this basis as conclusive because the property was still being operated, and fixed its fair value for taxation purposes considerably over that amount. The value of all the prop-

erty was assessed by the tax commissioner in 1919 at $7,000,000, and a division thereof made and apportioned to Whitman county, of which ratio of division no complaint is made. In the present suit the trial judge fixed that value at $3,870,000, for the year 1919 and apportioned to Whitman county its share in the ratio theretofore established and fixed the amount of taxes due accordingly. For the year 1920, after the property had been divided and conveyed to two corporations that were composed of the total of those who purchased at the receiver's sale, the property belonging to the respondent was assessed by the state tax commissioner at something less than the amount distributed to it by the assessment of the previous year, and in the present suit the trial judge made a reduction of its assessable value for that year at comparatively the same rate the 1919 assessment was reduced and fixed the amount of taxes due accordingly.

The amounts determined upon seem to have been reached in consideration of a substantial amount in excess of its salvage value, on the theory that it was still a going concern, taken in connection with the amount the property had been sold for, since which time its owners had unsuccessfully but persistently attempted to dispose of it at the price they gave for it. Formerly, and for many years, this property appears to have been remunerative to its owners and bond holders but at and prior to the years for which these taxes were levied its value had been almost destroyed as an operating property by a kind of competition theretofore unknown and unexpected, of which kind of competition it was said in the dissenting opinion in *Asia v. Seattle, supra*:

"It is a competition that will increase rather than diminish as time goes on, and the loss of patronage caused thereby, as I understand the situation, is the

principal reason why so many street car systems are now unable, with reasonable rates of fare, to make an adequate return on their investments.''

The vice president and general manager of the respondent since its organization, who has had many years of experience in railroad operation and who was the receiver under appointment of the Federal court by which the whole property was sold, testified that he saw no prospect of plaintiff ever being able to earn its operating expenses and taxes; that he had some hopes of keeping it stationary but did not intend to go on running it that way if he could help it. The elements considered ordinarily in arriving at the value of railroad property for the purpose of taxation, as many of the authorities put them, need not be enumerated in detail. In the present case, there is a condition that controls, most largely. In the case of *Oregon-Washington R. & Nav. Co. v. Thurston County,* 98 Wash. 218, 167 Pac. 930, it was said:

''It is, of course, a necessary rule that, in valuing a railroad, the first inquiry is as to its actual cost. That, *prima facie,* is its value. But if it appears that the actual cost was in excess of the necessary cost, the necessary cost is the proper standard. If it further appears that the net income of the road does not amount to current rates of interest on its necessary cost, and is not likely to do so, or if the business of the road is likely to be destroyed or impaired by competition or other cause, or if the utility of the road is not equal to its cost, then its value is less than its cost, and must be determined by reference to its utility alone. *State v. Central Pac. R. Co.,* 10 Nev. 47.''

See, also, *State v. Illinois Central R. Co.,* 27 Ill. 64; *Cincinnati Southern R. v. Guenther,* 19 Fed. 395; *Oregon & California R. Co. v. Jackson County,* 38 Ore. 589, 64 Pac. 307.

It appears upon examination of all the evidence in this case that it fully warrants the conclusion and judgment of the trial court in fixing the value of the property for taxation purposes and that the assessment and levy complained of were excessive to an extent that justified the interposition of the court under the rule applicable in such cases.

Affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.