[No. 20098.  Department One.  December 20, 1926.]

W. R. AMMON *et al., Appellants,* v. BENTON COUNTY
*et al., Respondents.*[1]

[1] TAXATION (70, 105)—BANK SHARES—ASSESSMENT—WHEN LIEN
ATTACHES.  Rem. Comp. Stat., §§ 11097 and 11143, requires that
bank stock be assessed and the assessment equalized with refer-
ence to the value on the first day of March; hence the owner is
not entitled to a reduction of his assessment by merely showing
that the bank became insolvent in the following month of June.

Appeal from a judgment of the superior court for
Benton county, Truax, J., entered May 27, 1925, upon
findings in favor of the defendants, in an action to
cancel an assessment of bank shares for taxation.
Affirmed.

*McGregor & Fristoe,* for appellants.

*George O. Beardsley* and *Campbell W. Bushnell,* for
respondents.

HOLCOMB, J.—On April 14, 1924, the cashier of the
Citizens State Bank of Prosser, Washington, delivered
to the county assessor of Benton county, a signed and
sworn statement as to the financial condition of that
bank on March 1, 1924.  The statement, as required by
law (Rem. Comp. Stat. §11146) [P. C. §6917], showed
the name of each and every share-holder, his residence,
and the number of shares belonging to him at the close
of the business day next preceding the 1st day of
March, 1924, as the same then appeared on the books
of the bank.

The sworn statement disclosed that the value of each
share of stock was $82.72 as of March 1, 1924, and the
county assessor, with that information and other in-

[1]Reported in 251 Pac. 575.

formation which he said he received, fixed the actual value of each share of the bank stock at $82.72, and then, as required by law, assessed it fifty per cent of the actual value, or $41.36 per share.

On June 20, 1924, the state banking department took charge of the bank, and placed a deputy supervisor in control thereof. The county board of equalization of Benton county made no change in the assessment of the shares of stock of the Citizens State Bank at its meeting in August of that year, and the assessment remained the same. No application was made by the stockholders for a cancellation or reduction of the assessed value of the stock. Nevertheless, appellants claim that the stock, having become totally valueless between March 1, 1924, and August, 1924, when the county board of equalization met, and that it was a matter of universal knowledge in that community that the bank had failed, that its stock had been assessed one hundred per cent, and that therefore the stock was utterly worthless,—the board of equalization should, in some way of its own motion, have cancelled the assessment. This action was brought by certain of the stockholders of the insolvent bank against the county and the county treasurer to cancel the assessment based on the assessment of March 1, 1924.

[1] For reversal of the judgment against them dismissing their action, they contend that, the bank having failed June 20, 1924, its stock being wholly worthless thereafter, and the members of the board of equalization personally knowing that fact, were required by the provisions of Rem. Comp. Stat., §11219 [P. C. §7014] to "examine and compare the returns of the assessment of the property of the county and to proceed to equalize the same so that each article or class of personal property should be entered on the assessment list at its true and fair value."

Its true and fair value at what time? The statutes regarding assessment of personal property and the equalization thereof (Rem. Comp. Stat., §11097) [P. C. §6883] provide that all such property hereafter created or brought into this state shall be subject to assessment and taxation for the support of the state government, etc., upon equalized valuations thereof with reference thereto on the first day of March, at 12 o'clock M., in each and every year the same shall be listed, except such property as shall be expressly exempted.

This statute is not merely directory, as appellants contend, but is very positive and mandatory. There is little room for construction under it. The property shall not only be assessed, but equalized with reference to the value thereof on the first day of March at 12 o'clock noon.

The law also provides (Rem. Comp. Stat., §11143) [P. C. §6913] that:

"All the shares of stock in banks . . . located within the state, shall be assessed to the owners thereof in the cities or towns, where said banks are located, and not elsewhere. . . . all such shares shall be assessed at their full and fair value in money on the first day of March in each year, first deducting therefrom the proportionate part of the assessed value of the real estate belonging to the bank. And the persons or corporations who appear from the records of the bank to be owners of shares at the close of the business day next preceding the first day of March in each year shall be taken and deemed to be the owners thereof for the purposes of this section."

The above statute is also precise and clear. It requires bank shares to be assessed to the owners thereof at the full and fair value in money on the first day of March in each year, after deducting the proportionate part of the assessed value for the real estate.

Again, in Rem. Comp. Stat. §11109, [P. C. §6896] it is positively provided that personal property in this state subject to taxation shall be listed and assessed every year with reference to its value on the first day of March, preceding the assessment.

The bank and its cashier are made the agent of each stockholder for the purpose of making the statement hereinbefore mentioned, under §11146, *supra.*

Had the county board of equalization been appealed to to equalize the assessment against the shares of stock of the bank, manifestly it would have been the duty of that board to equalize the values of such shares as of March 1, 1924, at noon, and that day only. Had the bank failed on the afternoon of that day, the assessing and equalizing officers apparently would not have been justified in reducing or cancelling the assessment below the true and fair value in money of the shares of stock before noon. The value of most chattels or articles of personal property may decline very rapidly, or become entirely lost after assessment. An automobile may be worth five hundred dollars on March 1 of any year, and by some happening to it be worth only half that amount, or nothing, within a few days; but the owner would, nevertheless, be required to pay taxes on its fair value in money as of March 1 of that year, at noon. There is here no avoidance of our statute to that effect. Even the testimony of the assistant supervisor who was liquidating the insolvent bank, and the testimony of its vice-president, who was a stockholder but not the active manager of the bank, tend to show that the stock of the bank had the value shown in the statement of the cashier on March 1, 1924.

The liquidator admitted that it could not certainly be said that the bank had been insolvent since be-

fore March until about September 1, of that year, when it was evident that many of its crop securities, which previously were apparently good, could not be realized upon. Although he thought that the bank had been insolvent before March 1, 1924, his opinion was purely conjecture and at least no better, if as good as that of the cashier, who was in the active management and made the sworn statement; nor than the opinion of the vice-president who was certain, from knowledge of its condition and prospects, that the bank was not insolvent until in June, when it became evident that a large part of its paper could not be collected. Examiners of the state banking department had examined the bank in January and just previous to March 1, and evidently believed the bank to be solvent, or they would not have permitted it to continue in business.

There is nothing in the facts shown here that justifies any other conclusion than that the bank was solvent on March 1, and that its shares were assessed strictly in accordance with the statute, and worth substantially at that time the assessment against them.

There is nothing, therefore, in this case showing assessments capriciously or arbitrarily made, or excessively over-valued, which gives appellants rights regardless of the action of the board of equalization such as would bring this case within the rule of those cases relied upon by appellants, as: *Metropolitan Building Co. v. King County,* 72 Wash. 47, 129 Pac. 883; *National Lumber & Manufacturing Co. v. Chehalis County,* 86 Wash. 483, 150 Pac. 1164; *First Thought Gold Mines, Ltd. v. Stevens County,* 91 Wash. 437, 157 Pac. 1080; *Inland Empire R. Co. v. Whitman County,* 128 Wash. 358, 223 Pac. 6; *Tacoma Mill Co. v. Pierce County,* 130 Wash. 358, 227 Pac. 500.

We conclude that appellants had no case for relief,

either upon the law or the facts, and the judgment was right.

Affirmed.

TOLMAN, C. J., FULLERTON, MAIN, and MITCHELL, JJ., concur.