[No. 23584.  Department Two.  April 19, 1932.]

NORTH SHORE LAND COMPANY, *Appellant*, v. GRAYS HARBOR COUNTY *et al., Respondents.*[1]

[1]Reported in 10 P. (2d) 235.

*F. L. Morgan,* for appellant.

*John C. Graham* and *Charles W. Smith,* for respondents.

Holcomb, J.—Appellant first began an action, the complaint in which was verified on December 14, 1926, and filed February 10, 1927, to reduce taxes for the years from 1919 to 1925, inclusive, on nineteen tracts of land comprising a total of about eighteen hundred acres, described in the complaint owned by appellant, on which no taxes have been paid by appellant since 1919. During the trial of the first action, appellant commenced a second action asking for a reduction of taxes on the same tracts for the years 1926 to 1929, inclusive, which action, on motion of appellant, was consolidated with the first action, and tried on the same facts.

In the first action, appellant alleged, among other things, the physical description and topography of the tracts in question, as vacant and unoccupied, and as being very rough, hilly, and stumpy land from which the timber had been cut and removed, and of no value for agricultural purposes and of no rental value. It was then alleged that the county assessor assessed these lands for the years 1919 to 1925, inclusive, at a grossly unreasonable, fictitious and fraudulent valuation, and in an amount greatly in excess of the fair market value, which valuations were greatly in excess of the value set upon like property and of equal value similarly situated; and that the assessment was based upon a fraudulent and fictitious valuation arrived at by an arbitrary and unwarranted method, based upon a fundamentally wrong basis and system called the "zone system." It is alleged that the assessment was so grossly excessive as to constitute fraud. A paragraph of the complaint states the area of each tract

and its fair market value and value for assessment purposes based upon fifty per cent of its fair market value, in which the total fair market value of all the tracts was alleged to be $28,147, and the value for assessment purposes $14,073.50.

The second complaint duplicated the allegations made in the first with reference to the assessments for the years 1926, 1927, 1928 and 1929, and the same allegations of valuations as in the first.

These allegations were denied by respondents, and the court, after an extended hearing, made the following findings:

"That plaintiff failed to prove that the assessed valuations placed upon the lands described in plaintiff's complaint by the assessor of Grays Harbor county, Washington, for the year 1919 to 1925 inclusive, were so excessive as to constitute either actual or constructive fraud upon the plaintiff, but that the assessed valuations so placed upon the lands described in plaintiff's complaint by the assessor of Grays Harbor county, Washington, for the years 1919 to 1925 inclusive, were such assessed valuations as were placed upon like lands, similarly situated in Grays Harbor county, Washington, and that said assessments so made were a fair assessment of the lands described in plaintiff's complaint."

Because of the size of the record, the amount involved, and the importance of the case to both parties, the determination of this case has been delayed somewhat out of order. The evidence is very voluminous, and it is impractical to discuss it in detail in this opinion. When placed in apposition, one side against the other, there is disclosed sharp conflict in the opinions of the witnesses for the parties. Every case, however, must stand upon its own footing, governed by some well-settled principles of law.

The amount of taxes involved is between $40,-

000 and $50,000. No action was ever begun by appellant to secure relief from the supposed excessive valuation of its property until 1924. In that year, an application was made to the county authorities for reduction of assessments, and the county assessor then in office employed an expert, who was one of the principal experts who testified for appellant in the trial below. The total valuation that year had been placed at $30,-200 for assessment purposes, but had been much higher in the previous years. Upon his appraisement, the valuation for assessment purposes for the next year was fixed at $24,750, at approximately which figure it remained until 1928, when it was raised to $27,845.

During the years 1919 to 1924, inclusive, while the valuation was much higher than the valuation which commenced with 1925, it was not so high, when supported by the presumption that the assessing officers acted fairly and honestly and without fraud or discrimination, that we can say, in the absence of other evidence of arbitrary discrimination, that those assessments should be upset solely for the reason that they were much higher than for subsequent years or higher than the opinions of appellant's experts gave as the fair market value for all the years in question. They were not two or three times higher than the assessments for the several subsequent years up to and including 1929, as was true in cases relied upon by appellant.

*Finch v. Grays Harbor County,* 121 Wash. 486, 209 Pac. 833, 24 A. L. R. 644, quoted extensively by appellant, was widely different from this case in the facts shown as to the valuations put upon the lands in question and other lands of the same character in the immediate vicinity. The evidence there showed that the land was not worth, at the time the assessment was

made, to exceed $15,500, while the assessor's valuation was four times that amount.

*Weyerhaeuser Timber Co. v. Pierce County,* 97 Wash. 534, 167 Pac. 35, was a case where we found that there was actual arbitrary action on the part of the assessing officers, where they adopted old valuations without revision in the face of a depreciation in the market value, and without applying the fifty per cent basis for assessment, and then applying the zone system without relation to the quality or accessibility of the timber on any given tract. We there observed that it was well settled that the assessor and board of equalization act in a quasi-judicial capacity, that the law presumes that they had performed their duties in a proper manner, which presumption would be liberally indulged, and the evidence to overthrow it must be clear.

To the same effect is our recent case of *Crosby v. Kitsap County,* 154 Wash. 212, 281 Pac. 494. In the last case, we also noted that there was no evidence touching the question of whether there was a lack of uniformity in the assessments of appellants' property when compared with other like property in Kitsap county.

We have searched the record in vain for any evidence of disparity in the valuation and assessment of the property of appellant for the years in question with other like property in Grays Harbor county.

In *Northwestern Improvement Co. v. Pierce County,* 97 Wash. 528, 167 Pac. 33, we approved the earlier decisions to the effect that the assessor and board of equalization act in a quasi-judicial capacity in making or equalizing assessments; that the law presumes that they have performed their duty in a proper manner; that, where the rights of the public require it, the presumption in favor of due performance is liberal and

the evidence to overthrow it must be clear. We also there observed that the testimony of the witnesses for the county supported the assessment upon the lands involved and that:

"Even with no testimony to support it, there will be a clear presumption in favor of the correctness and fairness of the valuations placed upon these lands by the assessor, and we cannot find, without in the most part disregarding the testimony in behalf of respondent, that appellants have sustained the burden of showing excessive values."

In *Tacoma Mill Co. v. Pierce County,* 130 Wash. 358, 227 Pac. 500, the trial court found, and we affirmed it, that an assessment for the year 1922 at the valuation of $180,700, the mill having been sold during that same year for $90,000, which was the best price obtainable for the property, at a voluntary sale between a purchaser willing but not required to buy and a seller willing but not obligated to sell, was conclusive evidence that the property was assessed for more than twice its value for that year. We limited the effect of *Kinnear v. King County,* 124 Wash. 102, 213 Pac. 472, and reaffirmed decisions in *Northern Pacific Railway Co. v. Pierce County,* 127 Wash. 369, 220 Pac. 826, and *Inland Empire Railroad Co. v. Whitman County,* 128 Wash. 358, 223 Pac. 6, to the effect that excessive valuation alone, there being no showing as to comparative valuations, may be of such a pronounced character as to entitle the taxpayer to relief.

The facts above stated upon which the decision in that case rested, distinguish it from the instant case. There is no conclusive showing in the case before us that the property was valued at two or more times the actual fair market value. During the long period of time from 1919 to 1924, appellant allowed the valuations to stand without action or complaint, so far as

the record shows, from which it may be reasonably inferred that it did not consider those valuations so far excessive as to constitute constructive fraud, nor in great and discriminating disproportion with comparative valuations. The valuations commencing with 1925, as set up in the second complaint, are not so grossly excessive as to indicate fraud without any proof of other disproportionate valuations; and, moreover, are based upon appraisements made by an expert who was one of the principal experts for appellant.

We can find nothing in the record tending to show that the assessments made for the former years were made upon a "zone system," or on any other fundamentally wrong basis; or that they were assessed purely upon the speculative theory that they were tracts available for building purposes any more than were any other lands in the same locality which were assessed during those years.

Since the trial judge saw and heard the witnesses for both parties, made the findings heretofore quoted, and entered judgment accordingly, we are unable to upset the findings by determining that the evidence preponderates against them, or that there was clear and convincing evidence that the property of appellant was assessed at such overvaluations as to amount to constructive fraud on the part of the assessing officer. *Crosby v. Kitsap County, supra.*

We conclude that the judgment must be, and it is, affirmed.

MAIN, BEALS, and MILLARD, JJ., concur.

TOLMAN, C. J. (dissenting)—While I agree in the main with the abstract principles of law relied upon by the majority, yet the record, as I read it, discloses a state of facts which establishes that the valuations

placed upon this property defeat the very purpose of the assessment.

The purpose of the assessment of property and the levy of taxes is to raise revenue for the support of the government, state and local; and whenever the levy becomes confiscatory, and by reason thereof no taxes are paid, the result is that, by foreclosure, the property is removed from the tax rolls, no revenue is obtained for the support of the government, no one is benefited and both the land owner and the government lose.

The facts as disclosed by the record indicate clearly to my mind that no one could hope to pay such taxes as were here assessed on property non-income-producing and with a prospective value only, and come out whole in the end. An owner, even if he had the cash in hand with which to pay, would, as to considerable parts at least, be wise to save his money and let the county have the land.

I therefore dissent.