[No. 24697. Department Two. December 22, 1933.]

JOHN S. BAKER INVESTMENT COMPANY, *Appellant*, v. PIERCE COUNTY, *Respondent*.[1]

*Leo Teats* and *Ralph Teats*, for appellant.

*Bertil E. Johnson* and *D. D. Schneider*, for respondent.

HOLCOMB, J.—This appeal is from a judgment of dismissal of an action brought by appellant in its own behalf and as assignee of a similar claim against respondent assigned to appellant for the purposes of the suit, in which appellant sued to recover a refund of a portion of the taxes paid under protest covering three properties in the main business section of Tacoma.

These properties consist of lots 2 and 3, block 1104, Map of New Tacoma, which is known and referred to throughout the record as the Bernice building, situate on the westerly side of Pacific avenue and 40 feet south of 11th street; the property, commonly mentioned as the 10th and A street property, being

[1]Reported in 27 P. (2d) 1092.

lots 1 to 3 inclusive, and the northerly 19 feet of lot 4, block 1002, Map of New Tacoma, is situate on the southwest corner of south 10th and A streets; lots 3 to 7, inclusive, block 1303, Map of New Tacoma, situate on the east side of Pacific avenue and 50 feet south of 13th street, are designated as the 13th and Pacific avenue property.

John S. Baker, individually, owns the Bernice building and the 13th and Pacific avenue property. John S. Baker Investment Company owns the 10th and A street property. The last half of the taxes for 1931 were paid under protest, both by John S. Baker and John S. Baker Investment Company.

The Bernice building, of brick, with wood inside, was built by Mr. Baker in 1891. The construction, including the walls which he bought from the adjoining building, cost him between fifty thousand dollars and fifty-five thousand dollars. One of the buildings at 13th and Pacific avenue was built by Mr. Baker in 1887, but the other buildings were built prior to that. The 10th and A street building, built in 1887, was of brick with 12″ walls for the first floor and 8″ walls above, the bricks being laid upon planks covered with cement, and cost fifteen thousand dollars.

Proceeding in accordance with the statute, Rem. Rev. Stat., § 11111 et seq., the county assessor of Pierce county, in 1930, assessed all real property as of March 1, 1930. After having arrived at the value, assessments were made at fifty per cent of the cash market value. As of that date, he assessed the three properties in controversy, and the board of equalization made no changes in any of these valuations. Consequently, they continued as the assessor's valuations for tax purposes in 1931 unless they should be set aside by the court for actual or constructive fraud.

The valuations by the assessor as of March 1, 1930,

were as follows: Bernice building $62,710; 10th and A street property $28,680; and 13th and Pacific avenue property $38,325.

Appellant contends that the assessments are so grossly excessive as to amount to constructive fraud, and that they are not uniform when compared with the assessments on similar properties in the district.

The trial judge, after hearing the conflicting expert testimony as to the values of these and similar properties, the local values, rentals, and the financial conditions prevailing lately, summarized them in a memorandum opinion as follows:

"The Bernice building, constructed in 1891, is a six-story brick building, on two lots, with frontage on Pacific avenue and a second-story frontage on Commerce street in the rear. The lots are only forty feet south of 11th street which is the busiest east and west street in Tacoma. The busiest corner in the city with reference to the amount of traffic is Broadway and 11th street, this being the center of the best retail district. The next busiest corner is Pacific avenue and 11th street, this being the center of a combined retail and financial district. There is more traffic on the southwest corner of 11th and Pacific than on the other corners of the intersection. It is probable that this fact controlled the Woolworth Store executives in leasing the first two floors of the Bernice building at $1,000 a month. The upper four floors have been operated as an office building but the interior is frame and so obsolete that the operation has been a loss. It would require a considerable amount to modernize the interior of the building. The outer walls present a good appearance except that the front on Commerce is boarded up and this detracts from the appearance of the rear of the building. The building is better located and constructed, better preserved and much more adaptable to modernization than the other buildings referred to in this case.

"The 10th and A street property consists of about four lots with a brick two-story building constructed

in 1887. There are seven small store rooms on the street floor and rooms on the second floor. The building has poor foundations and is lightly constructed. The site is a valuable one in the heart of the city.

"The 13th and Pacific avenue property consists of five lots with three old buildings beginning with lot 3, which is fifty feet from the corner of 13th street and Pacific avenue, which is recognized as less desirable than property on the west side. The buildings are lightly constructed and in poor repair. They were erected in 1887.

"The plaintiff presented the testimony of five expert witnesses as to the valuation of the properties involved. The testimony of one of them was limited to the value of the Bernice building. The defendant presented the testimony of four experts on values. Three of plaintiff's experts testified as to the valuations of the properties here involved in a tax suit in 1926, at which time they valued the properties much higher than they do in this case. The court has tabulated and compared the valuations fixed by the experts. It is a noticeable fact that the valuation of [no] two experts agree. This is characteristic of the valuations fixed by experts in tax and condemnation cases. Experts honestly disagree as to real property valuations and especially when old buildings are involved as in this case.

"In fixing valuations of real property the experts and the court should consider the location, the buildings and their depreciation, the traffic, the income, sales in the locality, financial conditions, and other elements adding value to the property or diminishing its value.

"In this case the court has carefully considered all these things and has attempted to analyze and harmonize the testimony of the experts as to the true valuations of the properties involved, and will briefly state its conclusions.

"The court finds that all the lots in controversy have been correctly valued by the assessor; that the structure known as the Bernice building is of the value of $42,000. This would make the total valuations of the Bernice property of $114,500. The assessor's

valuation was $125,380. The difference in valuation is $10,880. This difference in valuation of the building is not so excessive as to justify the court in interfering with the assessment made on the Bernice property, by the assessor. The court further finds that the valuations fixed by the assessor on the 13th and Pacific avenue and 10th and A properties are approximately correct.

"It is claimed that the assessment placed on the Bernice building is unequal when compared with assessments on other similar buildings in the immediate district. The improvements are assessed at $26,440. The Bankers' Trust building (3 lots) at $20,000. The Provident building (4 lots) at $35,000. The Robert's building (2 lots on Broadway) at $12,000. The Bernice building has a much more favorable location than either the Provident or Bankers' Trust buildings, as it is nearer to the center of traffic and it is a well recognized fact that property on the west side of Pacific avenue is much more valuable than that on the east side. Then too, the Bernice building has two street frontages, one on Pacific and the second floor on Commerce street, while the other two buildings have an alley in the rear. The Robert's building is a greater distance from the Bernice building than the others. The court thinks that the Robert's building is undervalued considering its desirable location on Broadway. The court is convinced that the Bernice property as a whole is assessed on a uniform basis with other similar property in the district."

He accordingly made conclusions and entered a judgment in favor of respondent.

It is clear that there is here nothing more than a difference of opinion as to the values of these several properties for taxation purposes.

The record shows that the assessment on the 10th and A street property in 1926 was $37,915; in 1928 $33,615; and in 1930, as of March 1, $28,680. The Bernice property was assessed in 1926 at $81,460; in

1928 at $76,460; and in 1930 at $62,710. The 13th and Pacific avenue property was assessed in 1926 at $45,325; in 1928 at $43,325; and in 1930 at $38,325.

The foregoing reductions, for the three assessment years, evidence that the assessors realized the depreciation of property values and were not making speculative valuations such as were condemned by this court in *First Thought Gold Mines v. Stevens County,* 91 Wash. 437, 157 Pac. 1080; nor basing them upon theoretical, or problematical conditions, as in *In re Metropolitan Building Co.,* 144 Wash. 469, 258 Pac. 473.

Nor were any of the properties appraised for assessment purposes, upon a fundamentally wrong basis or system, as was true of some of the real estate in *Finch v. Grays Harbor County,* 121 Wash. 486, 209 Pac. 833, 24 A. L. R. 644.

It is further apparent from what has been stated as to the assessments that the valuations were not double or treble the actual, fair cash market value, such as was held to be excessive and arbitrary, in *Northern Pacific Railway Co. v. Pierce County,* 127 Wash. 369, 220 Pac. 826; nor double the sale price during the same year it was assessed, at a voluntary sale and purchase, as in *Tacoma Mill Co. v. Pierce County,* 130 Wash. 358, 227 Pac. 500.

"The rule with reference to the reasonableness of valuations placed on property for taxation purposes favors the public officers charged with the duty of exercising judgment and discretion in fixing such values, and one who challenges them must do so with proof that is satisfactory and convincing." *Norpia Realty Corporation v. Thurston County,* 131 Wash. 675, 231 Pac. 13.

Here, as in that case, while it appears that some of the real estate was assessed to appellant at rather

high valuations, we are unable to say that such excess is of sufficient moment to fix on those assessments that degree of excess necessary to find in them such arbitrariness, or constructive fraud, recognized in equity, to justify a reduction, or relief.

It is not enough that we should be of the opinion that the assessments were in excess of the true values of the property. The question of value is largely one of opinion, and in such cases the law has confided to the taxing officers the authority to determine values. It is only when the officers act maliciously, capriciously or fraudulently, that their conclusions as to values will be disturbed. *Edison Electric Illuminating Co. v. Spokane County,* 22 Wash. 168, 60 Pac. 132; *Crosby v. Kitsap County,* 154 Wash. 212, 281 Pac. 494; *Wiley v. Spokane County,* 159 Wash. 291, 293 Pac. 279.

The courts will not interfere because of a mere difference of opinion as to values. *North Shore Land Co. v. Grays Harbor County,* 168 Wash. 16, 10 P. (2d) 235. See, also, *Kinnear v. King County,* 124 Wash. 102, 213 Pac. 472.

We can see no warrant, in this record, for interference with the assessments as sustained by the trial court.

The judgment is affirmed.

BEALS, C. J., GERAGHTY, TOLMAN, and BLAKE, JJ., concur.