[No. 28532. Department Two. April 23, 1942.]

AMERICAN SMELTING AND REFINING COMPANY *et al.,*
*Appellants,* v. WHATCOM COUNTY *et al.,*
*Respondents.*[1]

[1]Reported in 124 P. (2d) 963.

*Jno. Mills Day,* for appellants.

*Edward E. Johnson* and *F. M. Hamilton,* for respondents.

BEALS, J.—For some time prior to January 1, 1938, Azurite Gold Company, a Washington corporation (hereinafter referred to as Azurite), held under location notices a group of unpatented mining claims in the Slate creek mining district, situated in the eastern portion of Whatcom county, American Smelting and Refining Company, a New Jersey corporation (hereinafter referred to as the Refining Co.), holding the claims under an operating lease.

January 1, 1938, the Refining Co. filed in the office of the assessor of Whatcom county a statement showing the value of its property located on or in connection with Azurite mining claims. In this report, the possessory rights in connection with the claims were valued at twenty thousand dollars. The improvements on the claims were valued separately, and with these we are not concerned. Thereafter, the county assessor, for the purpose of tax levies, valued the possessory rights, which of course included the right to take valuable minerals from the properties, at four hundred thousand dollars, and extended the value for purposes of assessment at two hundred thousand dollars, causing taxes as for personalty to be levied against the mining claims upon that basis. The taxes so levied amounted to $3,674, which were paid under protest by the Refining Co., its written protest reading as follows:

"(1) That the assessment of 'possessory rights of mine claims' is void;

"(2) That the taxation of 'possessory rights in mine claims' is not authorized by law;

"(3) That the taxation of 'possessory rights in mine claims' would result in depriving the taxpayer of property without due process of law contrary to Section 1 of the Fourteenth Amendment of the Constitution of the United States and to Section 3, Article I of the State of Washington, and to the Fourteenth Amendment of the Constitution of the State of Washington which exempts from taxation property of the United States;

"(4) The 'possessory rights' sought to be taxed is the property of the United States;

"(5) That said alleged 'possessory rights' is a mere license and is not a property right separate from the property vested in the United States;

"(6) That any right on the part of the taxpayer to extract the mineral resources is not subject to taxation by any statute of the State of Washington;

"(7) That in imposing a tax upon possessory rights the county exceeded its authority under the statutes of the State of Washington;

"(8) That in any event the amount of the assessment is excessive and not based on any reasonable estimate of the value of the property;

"(9) That 'possessory rights' to real estate are real estate under the laws of Washington and cannot be assessed as personal property;

"(10) That no law of the State of Washington authorized the assessor of the state to list 'possessory rights' to real estate as personal property or assess the same for taxation;

"(11) That said assessment upon 'possessory rights' is void as it fails to designate the real estate upon which the possessory rights are taxed;

"(12) That the assessment of 'possessory rights' is void for the reason that it attempts to assess taxes upon possessory rights on indefinite and undesignated lands;

"(13) That the said assessment on the 'possessory rights' is void for the reason that it assesses possessory rights upon a group of claims without designating the

value of the possessory rights in any particular claim or claims."

Azurite, being responsible as between it and its lessee for some portion of the taxes, joined with the Refining Co. in filing a joint complaint in this action against Whatcom county, its assessor, and its treasurer, asking for judgment for the amount of taxes which had been paid under protest, as above set forth; that the county be enjoined from levying any tax against the possessory rights enjoyed by plaintiffs in connection with the unpatented mining claims, or that in any event the value of such possessory rights be declared to be no greater than twenty thousand dollars, and that no tax greater than one computed on the valuation of ten thousand dollars be permitted to stand.

The defendants answered, denying the material allegations of plaintiffs' complaint, and the action was tried to the court, resulting in findings of fact and conclusions of law in favor of the defendants, followed by a judgment dismissing the action, from which plaintiffs have appealed.

Error is assigned upon the court's holding that the possessory rights held by appellant Refining Co. in connection with mining claims were subject to taxation by the state; upon the court's ruling that the valuation placed by the county assessor upon such possessory rights should not be set aside or reduced; upon the making of certain findings of fact which appellants contend are not supported by the evidence in the case; upon the court's conclusion that possessory rights in mining claims on unpatented government lands are taxable as personal property; upon the entry of judgment dismissing the action; and upon the denial of appellants' motion for judgment in their favor or, in the alternative, for a new trial.

■ In the first place, appellants contend that, while possessory and mining rights in mining claims located on unpatented government lands were for many years subject to taxation under the constitution and laws of this state, such rights have not been taxable since November, 1930, when the fourteenth amendment to our state constitution was adopted, because of the following provision contained in the amendment referred to:

"The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: Provided, That the Legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an *ad valorem* tax at such rate as it may fix, or by both. Such property as the Legislature may by general laws provide shall be exempt from taxation."

Appellants argue that, as the fourteenth amendment to our constitution, above referred to, provides that "the legislature may tax mines and mineral resources," it should be held that such properties may be subjected to taxation only pursuant to express legislative enactment, in accordance with the amendment to the constitution. Appellants do not contend that such possessory rights are not personal property, but contend that such property is not taxable in this state, because the legislature has not by statute provided that such property shall be taxed.

Rem. Rev. Stat., § 11312 [P. C. § 1730], being a portion of chapter 38, p. 53, § 1, Laws of 1907, reads in part as follows:

"The commissioners of any of the counties of the state of Washington which have acquired, or which may hereafter acquire, mining claims or properties through the nonpayment of taxes may, when they deem it most advantageous for the county, lease, to the highest and best bidder at public auction with or without an option to purchase, said mining claims or properties or any part thereof, instead of selling the same at public sale."

Appellants argue that this section may well refer to rights in unpatented mining claims to which a county may have acquired title by distraint in the course of the collection of taxes levied against other property of the tax debtor, or because of nonpayment of taxes levied upon improvements upon such mining claims. Possibly, possessory rights acquired as suggested by appellants might be leased pursuant to the section of the statute above referred to, but it seems clear that in enacting the statute the legislature had in mind unpatented mining claims or properties acquired through nonpayment of taxes levied directly against the same.

In the case of *State ex rel. Mason County Logging Co. v. Wiley,* 177 Wash. 65, 31 P. (2d) 539, this court considered chapter 40, p. 117, Laws of 1931 (Rem. Rev. Stat., § 11219-1 [P. C. § 2557-1]), known as the reforestation act, which provided, *inter alia,* for the taxation of lands chiefly valuable for the development and growth of forests, the statute having been enacted pursuant to the fourteenth amendment of the constitution. In the course of the opinion, we said:

"It is the manifest purpose of the fourteenth amendment, by the proviso, to leave with the legislature the fullest power of taxation by either or both of the two methods possible, a tax upon yield or upon value, at such rate—expressed in terms of value or percentage—as it may fix.

"In construing the proviso, it is to be borne in mind that the legislature possesses inherently a plenary

power in the matter of taxation, except as limited by the constitution. No constitutional grant of the taxing power is needed. The fourteenth amendment, like the sections it replaces, is a limitation upon the power of the legislature, rather than a grant."

We have held that mining claims held under location notices may be sold under execution as personal property. *Huffman v. Ellen Mining Co.*, 118 Wash. 546, 204 Pac. 197; *Woodworth v. Edwards,* 3 Wn. (2d) 579, 101 P. (2d) 591. The fourteenth amendment defines the word "property," as used therein, as meaning and including "everything, whether tangible or intangible, subject to ownership." There can be no question but that the constitution contemplates that all property within the state shall be taxed, except such property as is by the constitution itself declared exempt from taxation, and such property as the legislature "may by general laws provide shall be exempt from taxation."

In the early case of *Eureka Dist. Gold Mining Co. v. Ferry County,* 28 Wash. 250, 68 Pac. 727, a tax levied by the county against a mining claim was upheld. It appeared that the owner had applied for a patent, which was issued six months after the valuation for assessment purposes was made. It would seem, however, that, if possessory rights were not subject to taxation, a valuation by the assessor for taxation purposes made prior to the issuance of a patent, would have afforded no lawful basis for a tax. It appeared that the owner tendered an amount less than the amount claimed by the county in full discharge of the tax, and concerning this phase of the case the court called attention to the fact that, by offering to pay a certain sum on account of taxes for the year in question, the owner of the property recognized that possessory rights in the mining claim were taxable property. In this connection, it should be noted, as above

stated, that appellant, in its report to the county assessor, valued its possessory rights to the mining claims with which we are concerned, at the considerable sum of twenty thousand dollars.

The definition of the word "property," as used in the fourteenth amendment, *supra,* is as broad and comprehensive as may well be imagined. The fourteenth amendment to our constitution does not exempt from taxation possessory rights in mining properties until such time as the legislature shall by statute provide for taxation of such properties pursuant to the constitutional amendment, and, in the absence of such legislation, such possessory rights are nevertheless subject to taxation.

Granting, as argued by appellants, that the exercise of the taxing power of the state is a legislative function, and bearing in mind Art. VII, § 5, of our state constitution, which prohibits the levying of any tax otherwise than pursuant to law, we hold that such possessory rights in mining claims as those enjoyed by appellants are property, and are subject to taxation under the constitution and laws of this state.

Appellants next contend that the valuation of the possessory rights, as returned by the county assessor for the year 1938, was grossly excessive. It will be remembered that January 1, 1938, the assessor valued the possessory rights at four hundred thousand dollars, extending the valuation for taxation at one-half of that amount, or two hundred thousand dollars. Appellants, in the schedule which their accountant prepared for taxation purposes at the time in question, valued their possessory rights in the property at twenty thousand dollars, which would result in an assessment upon the basis of a value of ten thousand dollars.

Appellants argue that, at the time of the preparation

of this schedule, the outcome of the operations was apparent, and that, in view of that net result, their possessory rights were fairly valued in the schedule. Appellants also argue that the tax here in question should be set aside, in view of the testimony of the mining engineer who testified on their behalf to the effect that as early as 1936 it was known that appellant Refining Co. would not realize any profit from the mining venture, and that, because the net result of the mining operations was a substantial loss to appellant Refining Co., the possessory rights, January 1, 1938, were without value.

The mining engineer who testified for appellants stated that the reports of the mining operations prepared by appellants' accountant showed only an operating profit, and not a real profit, and that the only way to show the real profit of the mining operations would be to include a charging-off of the original investment. This might be true if the net result of the entire mining operations were pertinent to this inquiry, but that question is not determinative of this controversy. Appellants clearly state the question at issue as follows:

"The only factual matter which seems to be in dispute is as to the value of these possessory rights on the first of January, 1938, the date as of which these taxes were levied."

The net result of several years mining operations has little, if any, bearing upon this question.

From a statement of operations for the years 1936 to 1939, both inclusive, it appears that, during the first year mentioned, the sales of metal mined aggregated approximately $19,000; for 1937, the sales amounted to almost $440,000; for 1938, $421,000; and in 1939, $91,000. The company showed the following operat-

ing results, in round figures: 1936, loss $31,000; 1937, gain $183,000; 1938, gain $133,000; 1939, gain $39,000.

We are here concerned with the valuation of appellants' possessory rights in the property as of January 1, 1938. The last figures shown, of course, refer to operating profits. The net result of the operations, taking into account capital investment extending over the entire mining project, tell a different story.

Appellants have followed the proper method to test the legality of the acts of the county officers in assessing their property for the year 1938. *Northern Pacific R. Co. v. Pierce County*, 127 Wash. 369, 220 Pac. 826; *Inland Empire R. Co. v. Whitman County*, 128 Wash. 358, 223 Pac. 6; *Inland Empire Land Co. v. Douglas County*, 149 Wash. 253, 270 Pac. 812; *Northwestern and Pacific Hypotheekbank v. Adams County*, 174 Wash. 447, 24 P. (2d) 1086.

On the basic question to be determined, the rule is laid down in the case of *Baker Inv. Co. v. Pierce County*, 175 Wash. 669, 27 P. (2d) 1092, in which we said:

"It is not enough that we should be of the opinion that the assessments were in excess of the true values of the property. The question of value is largely one of opinion, and in such cases the law has confided to the taxing officers the authority to determine values. It is only when the officers act maliciously, capriciously or fraudulently, that their conclusions as to values will be disturbed.

"The courts will not interfere because of a mere difference of opinion as to values."

The recent case of *Dexter Horton Building Co. v. King County*, 10 Wn. (2d) 186, 116 P. (2d) 507, is to the same effect.

The burden of proof rests upon appellants to prove their case by evidence of the most clear and convincing character. *Heuston v. King County*, 90

Wash. 200, 155 Pac. 773; *Wiley v. Spokane County*, 159 Wash. 291, 293 Pac. 279.

█ Appellants argue that, because the net result of the mining operations, taking into account capital investments, was a loss, the trial court erred in refusing to follow appellants' argument that appellants' possessory rights were valueless as of January 1, 1938. One of appellants' witnesses, a mining engineer of experience and ability, who had examined the property in 1933, and who made another examination in October, 1938, testified that the reports above referred to showed merely an operating profit, not a true profit, and that the only way a true profit could be determined, in view of the fact that the commercial ore in the claims lying in continuous workable bodies which could be worked with any margin of profit had been eliminated, would be to charge off the original investment. Following this line of reasoning, the witness stated that, in his opinion, appellants' possessory rights, as of January 1, 1938, were without value.

The value of mining property is generally difficult to determine in advance. Standing timber may be scaled and its value determined with reasonable accuracy, but to fix, for assessment purposes, the value of a mining property, which depends, at least to a considerable extent, upon the value of mineral *in situ* beneath the surface of the ground, presents a more complex problem.

Beyond question, there was, January 1, 1938, much valuable metal in the ground, which could be mined and sold at an operating profit. That such was the case was the considered judgment of the county assessor. The record contains no suggestion of any bad faith or capricious or unreasonable conduct on the part of the assessing officers. The trial court upheld

the action of the county officials in assessing the property and levying and collecting the tax.

In view of the rules of law applicable to such a situation as is here presented, as laid down in decisions of this court above cited, and others of similar import, it cannot be held that the trial court erred in entering findings of fact and conclusions of law upholding the acts of the county officers, and in entering judgment dismissing the action.

The judgment appealed from is accordingly affirmed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.