[No. 6010. Decided February 23, 1906.]

ALLEN WEIR, *Appellant, v.* THE SEATTLE ELECTRIC COMPANY, *Respondent.*[1]

CARRIERS—NEGLIGENCE—PASSENGER ALIGHTING FROM STREET CAR— QUESTION FOR JURY. In an action for personal injuries sustained in falling from a street car, it cannot be said as a matter of law that the street car company was free from negligence or that the plaintiff was guilty of contributory negligence, and it is error to direct a verdict for the defendant, where there was a conflict in the testimony as to the custom of stopping cars on the far side of a certain street intersection, and it appears from the plaintiff's testimony that, after having stopped at the switch on the other side of the intersection, the plaintiff informed the conductor that he desired to stop at said street, and insisted upon his right to do so, whereupon the conductor signalled to the motorman to stop the car, and the plaintiff took his position on the lower step with his hand on the extension rod to alight, while the car was slowly approaching the

[1]Reported in 84 Pac. 597.

far side of the street; that instead of stopping, the speed of the car was increased 8 or 10 miles an hour, and the plaintiff was thrown or hurled from the same, without fault on his part; since notwithstanding conflicting evidence, the testimony of the plaintiff must be accepted and the jury might infer therefrom that the failure to stop the car in obedience to the signal was the proximate cause of the injury, and that the plaintiff had a right to presume that the car would come to a stop, and to act upon that presumption.

TRIAL—TAKING CASE FROM JURY—PREPONDERANCE OF EVIDENCE. The rule that the trial court is justified in taking a case from the jury where the testimony so strongly preponderates that it would have been its duty to set aside a verdict in favor of the plaintiff, does not prevail in this state, since here the granting of a new trial rests in the discretion of the trial court and to concede the same power in directing a judgment would practically abrogate trial by jury.

SAME—NONSUIT—DIRECTING VERDICT—EFFECT. If the court would not be warranted in granting a nonsuit it would not be warranted in directing a verdict for the defendant, there being no substantial difference between the two judgments except that one is *res judicata* and the other is not, unless based upon an affirmative finding.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered July 8, 1905, upon the verdict of a jury rendered in favor of the defendant by direction of the court, after a trial on the merits, in an action for personal injuries sustained by a passenger in a fall from a street car. Reversed.

*Brady & Gay,* for appellant.

*Hughes, McMicken, Dovell & Ramsey,* for respondent.

RUDKIN, J.—On the evening of December 15, 1904, the plaintiff became a passenger on one of the defendant's First avenue cars, in the city of Seattle, with a view of reaching his home on Virginia street. First avenue and Virginia street intersect at right angles. Immediately south of the south line of Virginia street there is a switch on the First avenue line where the cars turn from First avenue into Virginia street. The outgoing cars on the First avenue line stop at this switch, but do not, as a rule, stop on the north side of

Virginia street. The incoming cars, on the other hand, stop at the north side of Virginia street, but do not on the south. In other words, the general rule that cars stop on the far side of intersecting streets is here reversed. Up to this point there is no conflict in the testimony, except as to the custom of stopping outgoing cars on the north side of Virginia street.

The plaintiff testified that he got off the car at that point a number of times, while the employees of the defendant testified that the cars rarely stopped there. The plaintiff further testified that he was riding on the back platform of the car, talking to a friend and waiting for the conductor to call out Virginia street. The car stopped at the switch at the south side of Virginia street and, as the car started up, the plaintiff touched the conductor on the elbow, inquired if that was Virginia street, and informed him that he desired to get off there. The conductor replied that the car would not stop again until it reached Lenora street, which is the next street beyond Virginia. The plaintiff protested against this, and said: "Lenora nothing; I get off here." The conductor thereupon gave one bell, which is the usual signal to stop the car, and the plaintiff made his way across the platform and took a position on the lower step of the car, with his left hand on the stanchion, so as to be ready to alight when the car reached the north side of Virginia street. At the time the signal to stop was given, the car was moving slowly into Virginia street, and by the time the plaintiff reached the lower step the car was about the middle of the street. Instead of stopping at the north side of Virginia street, the car increased its speed so that by the time it reached that point, or very soon thereafter, it was going at the rate of eight or ten miles an hour. The plaintiff in some manner slipped or was thrown from the car receiving the injury complained of. The plaintiff was corroborated, in a measure, by the person with whom he was conversing just before leaving the car.

The defendant, on the other hand, called the conductor, the motorman, and several passengers who were on the car at the time, all of whom testified that the signal to stop the car was not given until the car had passed beyond the north side of Virginia street, and some of whom testified that the plaintiff voluntarily stepped or jumped from the car. At the close of all the testimony the court discharged the jury and directed a judgment for the defendant. From this judgment the plaintiff appeals.

In determining whether the court erred in withdrawing the case from the jury we must accept the appellant's theory of the case, in so far as there is testimony to sustain it. We must assume that the conductor signalled the motorman to stop the car just as it was entering Virginia street, at a slow rate of speed; that the appellant made his way across the platform and took his position on the lower step of the car, with his hand on the stanchion so as to be ready to alight when the car came to a stop in obedience to the signal; that instead of stopping, the motorman increased the speed of the car so that it had attained a speed of from eight to ten miles an hour at, or soon after, reaching the the north side of Virginia street; and that the appellant was hurled or thrown from the car without fault on his part.

Was there no evidence of negligence here, as a matter of law, or was this an exercise of the highest degree of care consistent with the practical operation of a street railway? A person who voluntarily rides on the steps of a street car assumes the ordinary risk incident to his position, and if injured through the ordinary jerking or jolting of the car, he cannot recover; but the appellant was not riding on the car step voluntarily, nor was he guilty of negligence, as a matter of law, in making his way to the step after the signal to stop was given. We may take judicial notice of the fact that this is a common practice in all street car traffic. The appellant assumed the risk arising from the ordinary jerking or jolting of the car in reaching the stopping place, but he did

not assume any risk arising from the negligence of the respondent or its servants.

The negligence on the part of the respondent consisted in this: the servants in charge of the car led the appellant into a place of more or less danger and threw him off his guard. In other words, the appellant had a right to presume that the car would come to a stop at the north side of Virginia street, and to act upon that presumption. The jury might infer from this testimony that the failure to stop the car in obedience to the signal was the direct and proximate cause of the appellant's injury. It cannot be said, as a matter of law, that the appellant was guilty of contributory negligence. Indeed the respondent does not so contend. It cannot be said that the appellant assumed the extra hazard arising from the failure of the respondent to stop the car, as it was in duty bound to do, nor in our opinion can it be said, as a matter of law, that the respondent was entirely free from negligence which contributed approximately to the injury. As above stated, we have thus far assumed that the appellant's testimony is true. Of course, if the signal to stop the car was not given until after the car passed beyond Virginia street, or if the appellant voluntarily stepped or jumped from the car, or was otherwise guilty of contributory negligence, he cannot recover.

The respondent further contends that the preponderance of the testimony was so strongly in its favor that it would have been the duty of the court to set aside a verdict in favor of the appellant, had one been found or returned, and that the court was therefore justified in directing a judgment in the first instance. Judging from the number of witnesses alone, and that is practically the only guide we have, it will readily be conceded that a preponderance of the testimony was with the respondent, but that alone would not justify the action of the trial court. Doubtless, in some jurisdictions the rule prevails that if the court would set aside a verdict in favor of one of the parties as against the evidence, it may

direct a verdict or judgment in favor of the adverse party, but that rule does not obtain in this state. We have uniformly held that the granting of a new trial rests in the discretion of the trial court, and if we concede to the trial courts the same power or discretion in directing judgments, the right of trial by jury will be practically abrogated. The power of a superior court to direct a judgment is practically commensurate with its power to direct a nonsuit. The only substantial difference between the two judgments is, that the former is *res adjudicata,* while the latter is not, unless based upon some affirmative finding. Cases may arise in which a plaintiff's *prima facie* case is so fully explained and controverted as to leave no substantial conflict in the testimony, but ordinarily testimony which is sufficient to carry a case beyond a nonsuit will carry it to the jury at the close of the testimony. In construing the statute under which the court directed the judgment appealed from, in *Spokane etc. Lumber Co. v. Loy,* 21 Wash. 501, 58 Pac. 672, 60 Pac. 1119, the court said:

"We do not think it was the intention of the legislature in enacting this statute to empower the superior courts of the state to determine matters of fact such as are usually determined by a jury, but simply to authorize the taking of a case from the jury when the facts are so clearly established that the court can see, as a matter of law, what the verdict and decision should be. In other words, where the court would not have been warranted under the prior statute in granting a nonsuit, it would not, we think, be justified under this statute, in taking the case from the jury and directing a judgment to be entered."

We think that under the testimony the court should have submitted the case to the jury, and if dissatisfied with the verdict, its power was limited to the granting of a new trial.

The judgment of the court below is therefore reversed.

Mount, C. J., Fullerton, Hadley, Crow, Root, and Dunbar, JJ., concur.