[No. 18396. *En Banc.* December 16, 1924.]

NORPIA REALTY CORPORATION, *Appellant,* v. THURSTON COUNTY *et al., Respondents.*[1]

TAXATION (96, 210)—ASSESSSSMENT—PRESUMPTIONS—REASONABLE-NESS—EVIDENCE—SUFFICIENCY. An assessment of unimproved acreage for taxation will not be held excessively arbitrary or fraudulent, although the valuations were rather high, where the proof challenging the discretion of the taxing officers is not satisfactory and convincing.

SAME (210)—EXCESSIVE ASSESSMENT — EVIDENCE — SUFFICIENCY. The assessment of an abandoned townsite is arbitrarily and fraudulently excessive, where small, useless lots were assessed at from $6 to $72 each, the townsite had lost its usefulness as such many years ago, and larger lots somewhat similarly situated, but nearer to the city, were assessed at an average of $3.50 per lot.

SAME (211)—INTEREST (25-1)—EXCESSIVE ASSESSMENT—SCOPE OF RELIEF—TENDER. Where a tender of taxes was made in an amount substantially less than was justly due, interest is properly allowed on the amount found due.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered September 25, 1923, in favor of the defendants, dismissing an action for a reduction of taxes. Affirmed in part and reversed in part.

*Frank C. Owings,* for appellant.

*Roscoe R. Fullerton,* for respondents.

MITCHELL, J.—The Norpia Realty Company, as owner of approximately 4,800 acres of land situated north of Olympia and east of Budds Inlet, instituted this action for relief from what it alleged were arbitrary and constructively fraudulent assessments upon its property for taxation for the years 1917 to 1922, both inclusive, the assessments being the same for each of the years involved. The superior court, on hearing

[1]Reported in 231 Pac. 13.

the case, sustained the assessments and dismissed the action, from which the realty company has appealed.

In considering the appeal, the property may be divided into two general classes, the one consisting of about 4,600 acres of unimproved lands, and the other of 1,803 lots in the townsite of Boston Harbor, which townsite comprises approximately 210 acres platted into streets, blocks and lots. The 4,600 acres consist of what is described as unimproved lands covered with brush and second growth timber. It lies in detached parcels of various sizes scattered here and there among other parcels, some of which are more or less improved and owned by a large number of other persons.

A faithful consideration of all the evidence, consisting of values generally, together with comparative values of other more or less similar lands in the same general locality, convinces us that, while it appears that appellant's lands were assessed, in some instances at least, at rather high valuations, we are unable to say that such excess is of sufficient moment to fix on the assessments complained of that degree of excess necessary to find in them the arbitrariness and constructive fraud recognized in equity as necessary to justify any reduction or relief. The rule with reference to the reasonabless of valuations placed on property for taxation purposes favors the public officers charged with the duty of exercising judgment and discretion in fixing such values, and one who challenges them must do so with proof that is satisfactory and convincing. *Washington Union Coal Co. v. Thurston County*, 105 Wash. 208, 177 Pac. 774, 2 A. L. R. 1546, and cases cited. We do not find such proof as to the acreage in this case, and are of the opinion that the judgment of the trial court in this respect was correct.

As to the 1,803 lots in the townsite of Boston Harbor, we reach a different conclusion. The townsite was laid

out in 1906 or 1907 by the predecessor in interest of
the present owner. At that time, and for some years
thereafter, it appears that the property was ex-
tensively advertised for sale, and yet only a very small
portion of it was sold, and it seems that some of it
has been resold for delinquent taxes. The owners of
the townsite erected six buildings of different kinds,
about the time of platting the property, that served
mostly as an advertisement. Nearly all of those build-
ings, for a number of years, have been unoccupied and
rapidly decaying. During the several years last past,
the present owner has sold only about fifteen lots, and
the evidence is not clear as to how many of them are
occupied and improved.

All of the testimony in the case shows that many
years ago the townsite lost its usefulness, if it ever had
any, as an advertising means of disposing of the prop-
erty, and that the few small sales of lots scattered over
the townsite constitute a detriment to the property
as to its highest and only practical value of being de-
voted to small acre tracts or farms. The place has not
a store, a church, nor a post office, and while it lies on
the waters of Budds Inlet, it is hardly accessible by
roadways except during the summer season. The
property is situated some seven miles north of Olym-
pia. The lots are small, being only thirty by one
hundred feet, and are assessed at from $6 to $72 each
—only two or three being assessed at the latter
amount—averaging about $12 per lot. The testimony
shows that very nearly adjoining the city of Olympia
there is another platted area bordering on Budds Inlet.
This land naturally is similar to that in Boston Harbor.
The lots are fifty by one hundred and twenty feet, or
twice the area of the lots in Boston Harbor, and were
assessed for the same years as those involved in this
suit at an average of $3.50 per lot. The evidence shows

that waterfront property has decreased about fifty per cent in market value within the last ten years, and while it does appear that there is navigable water immediately at the townsite of Boston Harbor, we are, nevertheless, of the opinion that this case is similar to that of *Henderson v. Pierce County*, 37 Wash. 201, 79 Pac. 617; *Dickson v. Kittitas County*, 42 Wash. 429, 84 Pac. 855, wherein this court said:

"The evidence here shows not only a gross overvaluation of the respondent's property, but it shows a gross overvaluation, we think, when compared with other property of like kind within the assessor's jurisdiction."

Under such circumstances the property owner is entitled to relief, according to the uniform holdings of this court. We are satisfied that the assessments of the property in Boston Harbor complained of are at least four times as great as they should be, and that the appellant is entitled to relief accordingly.

Complaint is made by the appellant against the assessments on buildings on a few of the lots. The record is not clear on that matter and the parties will be permitted to present evidence on this feature to the trial court if the appellant so elects. Further complaint is made of the assessment on a so-called reservoir in the sum of $330. The testimony is clear that for a part of the time for which assessments were made the reservoir was entirely worthless. It does not appear, however, how many years it was useless, and proof may be submitted to the trial court upon that matter if appellant so elects.

Contention is made by appellant that no interest should be paid on the taxes found to be due. A tender was made before suit, and kept good upon the commencement of the suit, of the amount of taxes the owner claimed to be justly due, and an additional sum

as interest to that date, if interest should be charged. The amount tendered, however, is substantially less than that which was justly due, so that interest will be charged and included in the judgment.

The cause is remanded with directions to the superior court to proceed according to the views expressed herein.

MAIN, C. J., TOLMAN, HOLCOMB, MACKINTOSH, BRIDGES, and PARKER, JJ., concur.

FULLERTON, J., took no part.

PEMBERTON, J. (concurring)—I concur in that portion of the opinion granting relief to appellant.