[No. 19197.    Department Two.    August 29, 1925.]

THE STATE OF WASHINGTON, *Respondent,* v. STANLEY JUKICH, *Appellant.*[1]

INTOXICATING LIQUORS (31, 50)—OFFENSES—JOINTIST—EVIDENCE— QUESTION FOR JURY. It is the duty of the court to sustain a challenge to the sufficiency of the evidence in a jointist case or grant a motion in arrest of judgment, where the only evidence of defendant's operation of the place was his city license to run a soft drink place; and the presumption therefrom of ownership or control was rebutted by undisputed evidence that defendant had sold out the place to the person found conducting it.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered October 9, 1924, upon a trial and conviction of being a jointist. Reversed.

[1]Reported in 239 Pac. 207.

*Joseph J. Lavin,* for appellant.

*Chas. H. Leavy* and *C. W. Greenough,* for respondent.

HOLCOMB, J.—Appellant and another were jointly charged with the crime of being jointists, in Spokane county, this state, on May 11, 1924, at No. 238 West Main avenue, in the city of Spokane. They were jointly tried and both convicted.

Motions for a directed verdict on behalf of appellant at the close of the state's case, at the conclusion of all the evidence in the case, and in arrest of judgment after verdict, were unsuccessfully made.

On December 31, 1923, appellant made application to the city clerk of Spokane for a license to conduct a soft drink establishment on the premises described in the information. On January 14, 1924, the city council having acted upon the application, a license was issued for the calendar year ending December 31, 1924.

When the officers searched the premises in question under a search warrant on May 11, 1924, the other defendant was present behind the bar and apparently conducting the place. An examination of the evidence shows that there was ample evidence upon which to convict the other defendant. The four officers who conducted the search and made the arrest of the other defendant testified at the trial that they did not see appellant at that time. He was arrested four days later at the court house in Spokane. No other evidence tending to connect appellant with the crime charged than that of having had the license issued to him on January 14, 1924, was introduced by the state.

Upon the denial by the trial court of the motion to direct a verdict in favor of appellant, appellant then introduced evidence which showed that, on May 6, 1924, he sold the soft drink establishment to one Cvietich.

There was evidence also introduced that the place in question, which was called the Garni Bar, was in a building occupied by, and known as, the Garni Hotel, conducted by one Pjevach, who had conducted it since December 22, 1922; that at one time appellant had been the proprietor of the Garni Bar, but had sold it to another, who ran it for a few months and it was taken back by appellant, who ran it for a few months and then sold it to Cvietich; that a lease was taken by Pjevach from Cvietich, and on May 6, 1924, they went to one Dodd, a real estate agent, who was also a notary public, and asked him to prepare a lease from Pjevach, the owner of the premises, to Cvietich, giving Dodd the necessary information therefor, and that he prepared the lease, and a few hours later took it to the Garni Bar, found Cvietich there tending bar, where it was executed by both parties in triplicate. Up to the time of the raid and arrest, the lease had never been recorded. The evidence also showed that Cvietich applied on May 6, 1924, to the city for a soft drink license; but that up to the time of the arrest, May 11, 1924, the license had not then been issued. The evidence also showed that, between May 5 and May 11, 1924, appellant informed the persons from whom he had bought cigars, tobaccos and soft drink goods that he had sold out his place, the Garni Bar, and that he then paid and obtained receipts for all bills owing by him up to that time, and informed the persons with whom he had dealt that thereafter he would not be responsible for any goods sold Cvietich, who had purchased the bar; that the last goods purchased by him were bought on May 3, 1924, payment for which would be due June 10, 1924, but he paid therefor on May 10, 1924.

The foregoing was not contradicted in any way.

At the conclusion of all the evidence, appellant renewed his motion that the court instruct the jury to re-

turn a verdict of not guilty, which the court denied, saying:

"I think I will have to let it go to the jury, although I would be rather surprised if the jury found the defendant guilty on this testimony. If I took it away from the jury I would have to say that the jury would not be permitted to discredit or disbelieve the testimony of the witnesses produced by the defendants."

Of the five claims of error made by appellant, only one merits attention: that the court erred in denying the motion of appellant, made after the state and appellant had rested, to instruct the jury to return a verdict of not guilty, and, as a continuation thereof, the motion of appellant for arrest of judgment.

There is no evidence whatever that appellant conducted or maintained the premises referred to in the information at the time alleged therein for the purpose of the unlawful sale of intoxicating liquor; and, on the contrary, there is undisputed and unimpeached evidence that shows that he did not.

Respondent attempts to show that the witnesses produced by appellant were all interested witnesses, the relations between them being so close and confidential, and that there were such inconsistencies, that the jury had the right to discredit their testimony. On the contrary, all the evidence that there is in the record shows that whatever relations had existed between appellant and these witnesses had ended. So far as the evidence in this case shows, these witnesses were all disinterested, and their testimony was unimpeached in any way. As an example of inconsistency, respondent cites the evidence of Pjevach that he had never seen appellant around the place after May 6, 1924, and then stated that appellant came in and talked with him practically every day after that. The evidence of Pjevach

is that he ran the hotel, which was on the floors above the bar, the bar being on the ground floor and the hotel on the two floors above, and Pjevach does not testify that appellant was around the place in question practically every day after May 6, but testified that appellant was there ''occasionally,'' ''once in a while;'' ''that before May 6, appellant came every morning and stayed and worked a while, and after the 6th he came once in a while, and came for the bills.'' Hence, respondent says that the jury had a right to determine from the circumstances whether appellant's transfers were *bona fide* or merely a disguise to screen his violation of the law by the use of convenient dummies.

The fallacy of that argument is that it was incumbent upon the state to prove beyond a reasonable doubt that appellant was conducting the place in question on the day alleged, either as owner or in some other capacity, as a joint for the sale of intoxicating liquors. It is true, the evidence shows that some one was conducting the place as a joint for the sale of intoxicating liquors, and some oné was convicted therefor. The only evidence there is in this case shows that it was not appellant that conducted the place as a joint.

In making a *prima facie* case, respondent relied upon the issuing of the license which was issued to appellant on January 14, 1924; that no other license had been issued to any other person up to the time of the raid and arrest; that the other defendant was found present and apparently operating the place when the arrest was made, and that therefore the presumption is that the other defendant was operating it either as agent or employee, or in connection with appellant. In support thereof respondent relies upon *State v. Weston,* 129 Wash. 507, 225 Pac. 411, a jointist case, where we said:

".   .   . but the mere fact that another held the legal title and had been in possession will not tend to show that appellant was not there conducting and maintaining a place for the unlawful sale of intoxicating liquor."

Here there is no evidence tending to show that appellant was there conducting and maintaining the place for the unlawful sale of intoxicating liquor and there is evidence to the contrary which is undenied.

In *Weir v. Seattle Electric Co.*, 41 Wash. 657, 84 Pac. 597, we said:

"Cases may arise in which a plaintiff's *prima facie* case is so fully explained and controverted as to leave no substantial conflict in the testimony."

In such cases, it is the duty of the court to take the case away from the jury, either upon a challenge to the sufficiency of the testimony or on motion for judgment notwithstanding the verdict.

And in *Roe v. Standard Furniture Co.*, 41 Wash. 546, 83 Pac. 1109, we said: "The facts being undisputed, it becomes the duty of the court to apply the law, there being no issue to submit to a jury." See, also, *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870.

In *Anning v. Rothschild & Co.*, 130 Wash. 232, 226 Pac. 1013, we repeated a quotation from a decision of the supreme court of South Dakota which had been quoted in the *Scarpelli* case, as follows:

" 'A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining the matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until *prima facie* evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced *prima facie* evi-

dence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated must meet his opponent's *prima facie* evidence with evidence and not presumptions. A presumption is not evidence of a fact but purely a conclusion.' ''

See, also, numerous cases cited in the *Anning* case, *supra.*

In this case the presumption of ownership or control of the Garni Bar from the license issued to appellant in January, 1924, was dispelled in the face of direct and positive evidence that the place had been sold to another who had applied for a license, according to the city clerk, and but a few days had elapsed between the date of the sale, the application for the license, and the prosecution. It is not strange that the new license had not been issued within five days when it is recalled that appellant applied for his license on December 31, 1923, and it was not issued until January 14, 1924.

The evidence as to the transfer of the place and the application for a license by the purchaser from appellant being uncontradicted, presents a situation such as that in *Lewin v. People,* 51 Colo. 137, 116 Pac. 1132, where it was held that the conclusion (referred to in the syllabus as ''instruction'') ''that accused could be convicted of the sale of intoxicating liquor because the license to operate a saloon was in his name, though he had some two years prior to the date of the alleged offense sold all his interest in the saloon and transferred his interest to another, was erroneous.'' See, also, *Mead v. Ph. Zang Brewing Co.,* 43 Colo. 1, 95 Pac. 284.

From the facts and the law in this case, we are compelled to conclude that His Honor, in not granting the motion for an instructed verdict of not guilty as to appellant, or the motion in arrest of judgment, erred, and

that the conviction and judgment must be reversed and the prosecution dismissed. It is so ordered.

Tolman, C. J., Mackintosh, and Mitchell, JJ., concur.