[No. 44366. En Banc. December 22, 1977.]

PIER 67, INC., *Appellant,* v. KING COUNTY, ET AL, *Respondents.*

*Jennings P. Felix, Inc., P.S.,* by *Jennings P. Felix,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Dennis E. Kenny, Deputy,* for respondents.

UTTER, J.—This is an appeal from property valuations for purposes of the ad valorem property tax. The primary issues are whether these valuations violate various provisions of the state and federal constitutions.

The present appeal is essentially a continuation of the original action commenced in 1964. We considered this case on two previous occasions. *See Pier 67, Inc. v. King County,* 71 Wn.2d 92, 426 P.2d 610 (1967) (*Pier 67* I); and *Pier 67, Inc. v. King County,* 78 Wn.2d 48, 469 P.2d 902 (1970), *cert. denied,* 401 U.S. 911, 27 L. Ed. 2d 810, 91 S. Ct. 876 (1971) (*Pier 67* II). The issues raised on this appeal stem primarily from *Pier 67* II. In that case, this court overruled prior statutory interpretations of RCW 84.40.030[1] and set a new standard for the valuation of leasehold interests and improvements on state–owned land. The result of that decision is that leaseholds of state-owned land and the improvements thereon are now valued with the same standards used for valuing taxable property

---

[1]At the time of *Pier 67* II, RCW 84.40.030 read in pertinent part: "[T]he assessor . . . shall value each article or description of property by itself, and at such price as he believes the same to be fairly worth in money at the time such

in general. No deductions are to be allowed for rent reserved and mortgage indebtedness.

Since *Pier 67* II, a host of legislation has been passed amending RCW 84.40.030.[2] Of interest to the present litigation is Laws of 1971, 1st Ex. Sess., ch. 43, § 1, p. 417.[3] This legislation was designed to temporarily and partially alleviate the effect of *Pier 67* II. However, the act was declared unconstitutional in *Haines v. Anaconda Aluminum Co.*, 87 Wn.2d 28, 549 P.2d 13 (1976). We also held that our decision in *Pier 67* II should be applied retroactively.

After our decision in *Pier 67* II, the King County assessor changed the valuations on appellant's (Pier 67, Inc.) leasehold and improvements (the Edgewater Inn, Seattle), and appellant now challenges their validity. The valuations in dispute concern assessment years 1963–67 and 1970–72 (for taxes payable in years 1964–68 and 1971–73). No taxes have been paid for those years.

The trial court made the following findings and conclusions: (1) The leaseholds of Pier 67, Inc., the Olympic Hotel, and the University Properties, Inc., have similar characteristics making the comparison of valuations valid

---

assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor. . . . Taxable leasehold estates shall be valued at such price as they would bring at a fair, voluntary sale for cash."

[2]*See* Laws of 1973, 1st Ex. Sess., ch. 195, § 96; Laws of 1973, 1st Ex. Sess., ch. 187, §§ 1–15; Laws of 1972, 1st Ex. Sess., ch. 125, § 2; Laws of 1971, 1st Ex. Sess., ch. 288; Laws of 1971, 1st Ex. Sess., ch. 43, § 1.

[3]This act provides in part: "Notwithstanding any other provisions of this section or of any other statute, when the value of any taxable leasehold estate created prior to January 1, 1971 is being determined for assessment years prior to the assessment year 1973, there shall be deducted from what would otherwise be the value thereof the present worth of the rentals and other consideration which may be required of the lessee by the lessor for the unexpired term thereof: PROVIDED, That the foregoing provisions of this sentence shall not apply to any extension or renewal, made after December 31, 1970 of the term of any such estate, or to any such estate after the date, if any, provided for in the agreement for rental renegotiation."

on the constitutional issues of discrimination and uniformity; (2) Pier 67, Inc., was unconstitutionally discriminated against for assessment years 1968 and 1969 based on the uncontested fact that mortgage payment deductions were allowed in those 2 years as to University Properties, Inc., while no similar deductions were granted when valuing appellant's leasehold and improvements. On the basis of this finding, the court concluded the assessments for the years 1968 and 1969 were void as a matter of law. It also found that if the Pier 67 property had been assessed in a uniform manner its assessed valuation would have been zero in each of these 2 years and fixed the value accordingly in its findings. Its judgment enjoined any further assessment for these 2 years. This is not appealed by respondents. (3) For all the other years in question, however, there was no unlawful discrimination against appellant despite a finding that the Olympic Hotel and the University Properties, Inc., were assessed in a "substantially different manner" than appellant for assessment years 1963 through 1969. This conclusion was based on the reasoning that (a) a fair determination of the true value of appellant's leasehold and improvements is possible under the statutes, and (b) appellant's leasehold is sufficiently akin to ordinary real property interests so that absent substantial specific evidence of discrimination, its leasehold should bear a fair burden of taxation. In addition, the presumption of correctness of an assessment prevailed. (4) On the basis of all the evidence, the full, true, and fair values for appellant's leasehold interest for assessment years 1963 through 1967 and 1970 through 1972 were determined. The values found for assessment years 1970, 1971, and 1972 were reduced by the amount of rents due in accordance with Laws of 1971, 1st Ex. Sess., ch. 43, § 1. (5) Our decision in *Pier 67* II does not constitute an impairment of contract and does not violate article 1, section 10 of the United States Constitution. (6) Finally, the court held that respondents are entitled to interest at the statutory rate of

8 percent per annum from May 23, 1968, to the date of payment.

## I

Appellant makes several assignments of error pertaining to the trial court's refusal to find it had been unconstitutionally discriminated against, not only during the years 1968 and 1969, but also 1963 through 1967, and 1970 through 1972. Appellant reasons that the interpretation of RCW 84.40.030 by this court prior to *Pier 67* II allowed deductions for mortgage amortization and it is logical to assume the assessor followed the law in the years prior to that decision. In addition, appellant argues that the assessor's failure to produce records which would evidence a contrary conclusion should create a presumption that the assessor did grant such deductions to other taxpayers, with the result that the failure to allow these deductions to the appellant constituted an act of unlawful discrimination.

Our constitution provides: "All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax . . ." Const. art. 7, § 1 (amendment 14). In interpreting the provisions of our constitution concerning uniformity of taxation this court has held:

It seems too plain for argument that to pick out the property of a particular owner and raise the assessed valuation of his property substantially above the assessed valuation of property of a like character similarly situated, violates the uniformity and equality provision of article VII, § 2, of the state constitution.

. . . *If the assessment is higher than that of property of like character and similar in situation, the assessment cannot be sustained, even though it be based on the true market value of the property.*

(Italics ours.) *Pacific Tel. & Tel. Co. v. Wooster,* 178 Wash. 180, 183–84, 34 P.2d 451 (1934). The United States Supreme Court has expressly held, in a case arising in this jurisdiction and on facts closely analogous to those now before us, that the use of different valuation techniques for

like properties, which result in substantially different assessments, constitutes an unconstitutional act of discrimination and voids the assessment. *Moses Lake Homes, Inc. v. Grant County,* 365 U.S. 744, 6 L. Ed. 2d 66, 81 S. Ct. 870 (1961). Appellant contends the respondents' general admission that the Olympic Hotel and University Properties, Inc., were assessed "in a substantially different manner" during the years 1963 through 1969, coupled with the existence of evidence of specific acts of discrimination in the only years in which records were preserved, constitutes sufficient evidence to conclude it has been the victim of the intentional and systematic use of discriminatory assessment techniques in each of the years in question.

Property tax assessments and the underlying valuations are presumed valid. *Alaska Land Co. v. King County,* 77 Wn.2d 247, 461 P.2d 339 (1969); *Dexter Horton Bldg. Co. v. King County,* 10 Wn.2d 186, 116 P.2d 507 (1941); *Bellingham Community Hotel Co. v. Whatcom County,* 190 Wash. 609, 70 P.2d 301 (1937). In addition, the assessor's valuations will only be overturned if the taxpayer can prove that the valuations were fraudulently, arbitrarily, or capriciously made (*Mason County Overtaxed, Inc. v. Mason County,* 62 Wn.2d 677, 384 P.2d 352 (1963); *Dexter Horton Bldg. Co. v. King County, supra*) or if the valuations violate some constitutional provision. *Pacific Tel. & Tel. Co. v. Wooster, supra.* The taxpayer has the burden of establishing by clear and convincing evidence that the valuations and assessments are illegal. *Alaska Land Co. v. King County, supra; Ozette Ry. v. Grays Harbor County,* 16 Wn.2d 459, 133 P.2d 983 (1943).

The trial court concluded the presumption of correct assessment must prevail for the years now at issue because the records which contained the valuation techniques utilized for the Olympic Hotel and University Properties, Inc., during these periods had not been preserved by the county, with the result that the appellant was unable to prove with absolute certainty that the Olympic Hotel and University Properties, Inc., had been allowed deductions which had

been denied to the appellant. In so holding, the trial court placed too great an emphasis upon the presumption of proper assessment.

The trial court found the leaseholds of Pier 67, the Olympic Hotel and University Properties, Inc., have similar characteristics, making comparison of assessments valid for purposes of determining compliance with the constitutional mandate of uniformity. It also found those properties were assessed in "a substantially different manner" for assessment years 1963 through 1969. Despite these findings, the court held, in essence, that absent specific evidence of discrimination as to *each* of the tax years in question (such as was found to exist for the years 1968 and 1969), the presumption of correctness prevails.

The cases in which the presumption of correctness was developed did not involve a factual setting such as this. Those cases concerned attacks on excessive or disparate evaluation, generally in a single year, rather than disparate valuation allegedly arising from the systematic use of varying valuation techniques as to similar property over a period of years. *See, e.g., Northwestern Improvement Co. v. Pierce County,* 97 Wash. 528, 167 P. 33 (1917); *Norpia Realty Corp. v. Thurston County,* 131 Wash. 675, 231 P. 13 (1924); *Swanson v. Snohomish County,* 191 Wash. 389, 71 P.2d 170 (1937); *Mason County Overtaxed, Inc. v. Mason County, supra; Alaska Land Co. v. King County, supra.*

■■ This case was begun in 1964. The county has been on notice since that time that appellant was seeking to determine the assessment method applied to the Olympic Hotel and University Properties, Inc., leaseholds for all tax years for which the relevant data is now unavailable. We have previously held on several occasions that where relevant evidence which would properly be a part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation, the only inference which the finder of fact may draw is that such evidence would be unfavorable

to him. In so holding, we have noted, "'[t]his rule is uniformly applied by the courts and is an integral part of our jurisprudence.'" *British Columbia Breweries (1918) Ltd. v. King County,* 17 Wn.2d 437, 455, 135 P.2d 870 (1943) (quoting with approval 20 Am. Jur. § 183, at 188). *See Bengston v. Shain,* 42 Wn.2d 404, 255 P.2d 892 (1953); *Krieger v. McLaughlin,* 50 Wn.2d 461, 313 P.2d 361 (1957).

The trial court found the appellant sustained his burden to prove discrimination as to the 2 years for which records were maintained by the county. As to the years 1964-67, for which no specific evidence (other than the fact that such deductions were then lawful and appellant's property was assessed at an enormously greater value than similar properties) is available, the only inference which may be drawn is unfavorable to the contention of the respondents that such discriminatory techniques were not in fact employed. *British Columbia Breweries (1918) Ltd. v. King County, supra.* There being no evidence to the contrary, the appellant has clearly met his burden as to these years. The record does, however, suggest that the Olympic Hotel and University Properties, Inc., were not allowed the mortgage amortization deductions which form the basis for appellant's claim of discrimination in the year 1970. While no evidence is available as to what technique was utilized in subsequent years, it is logical to assume, given our decision in *Pier 67* II, that such deductions were not allowed as to any taxpayers thereafter. This being so, we cannot conclude the appellant has adequately demonstrated discrimination in valuation techniques for the years subsequent to 1969.

We hold that the assessments for the years 1963-67 are also discriminatory and therefore void. Appellant is entitled to have its leasehold assessed for each of these years in a manner consistent with the techniques the evidence indicates were utilized with regard to other equivalent properties.[4]

---

[4]Nothing in this opinion should be construed as a retreat from the constitutional principles enunciated in *Pier 67* II. Respondents have not cross-appealed from the decision of the trial court voiding the 1968 and 1969 assessments for

## II

■ Appellant next asserts the trial court erroneously interpreted the leasehold moratorium act (Laws of 1971, 1st Ex. Sess., ch. 43, § 1) when it failed to deduct mortgage amortization from the annual property valuations for assessment years 1970 to 1972. This argument is without merit in light of our holding in *Haines v. Anaconda Aluminum Co.,* 87 Wn.2d 28, 549 P.2d 13 (1976), that this act is unconstitutional. Appellant contends, however, that the retroactive application of *Pier 67* II to the lease agreement between itself and the State would violate Const. art. 1, § 23,[5] and U.S. Const. art. 1, § 10.[6] This argument is without merit. The provision in the federal constitution that no state shall pass any law impairing the obligation of contracts refers to laws that act upon a contract itself rather than property which is the subject of a contract. *Clement Nat'l Bank v. Vermont,* 231 U.S. 120, 58 L. Ed. 147, 34 S. Ct. 31 (1913), *aff'g State v. Clement Nat'l Bank,* 84 Vt. 167, 78 A. 944 (1911). *See also Barwise v. Sheppard,* 299 U.S. 33, 81 L. Ed. 23, 57 S. Ct. 70, *rehearing denied,* 299 U.S. 622, 81 L. Ed. 458, 57 S. Ct. 229 (1936). The contract clause contained in the federal constitution is similar in scope and effect to that contained in our state constitution, *Ruano v. Spellman,* 81 Wn.2d 820, 505 P.2d 447 (1973). We hold this same principle applies to the contract clause contained in Const. art. 1, § 23 as well. Our decision in *Pier 67* II does not affect any element of the lease between Pier 67, Inc., and the State. The decision only changes the standards

---

failure to allow mortgage amortization deductions. Moreover, respondents have not argued on this appeal that allowing such deductions would be constitutionally impermissible. *See Haines v. Anaconda Aluminum Co.,* 87 Wn.2d 28, 549 P.2d 13 (1976). We conclude it is appropriate to allow such an adjustment *in this case* as the most appropriate means of providing relief to the appellant for the discrimination it has suffered.

[5]Const. art. 1, § 23 provides in pertinent part: "No . . . law impairing the obligations of contracts shall ever be passed."

[6]U.S. Const. art. 1, § 10 provides in pertinent part: "No state shall . . . pass any . . . law impairing the obligation of contracts".

used to value appellant's leasehold and improvements for tax purposes under RCW 84.40.030. Therefore there is no unconstitutional impairment.

## III

Finally, appellant assigns error to the trial court's award of interest at the statutory rate from May 23, 1968, to the date of payment. The general rule in this state is that, in the absence of a statute, delinquent taxes bear no interest. *State v. Pacific Tel. & Tel. Co.,* 195 Wash. 244, 80 P.2d 780 (1938). RCW 84.56.020 allows the imposition of interest upon delinquent taxes which are authorized under any provision of RCW Title 84. Appellant has not tendered the amount of taxes it felt to be justly due pending the outcome of this suit. Those taxes found to be justly due are therefore delinquent and subject to the payment of statutory interest. *Norpia Realty Corp. v. Thurston County, supra.* Appellant is liable for interest on the amount of taxes ultimately found to be delinquent by the trial court after allowance of the adjustments required by this decision as to the years 1963 through 1967. The decision of the trial court with regard to the assessment years 1968–69 and 1970–72 is affirmed.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

WRIGHT, C.J., and ROSELLINI, HAMILTON, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

STAFFORD, J. (dissenting in part)—I disagree with the majority insofar as it reverses the trial court's determination for assessment years 1963–1967 (*i.e.,* tax years 1964–1968). I concur with the balance of the opinion. Thus, I would affirm the trial court in toto.

I dissent even though I accept the following factual recitation made by the majority: (1) The leaseholds of appellant, the Olympic Hotel and University Properties, Inc., have similar characteristics making valuation comparisons valid on the constitutional issues of discrimination and

uniformity; (2) during assessment years 1968–69 (*i.e.*, tax years 1969–70) the available record of valuation techniques demonstrates that appellant was unconstitutionally discriminated against based on the uncontested fact that mortgage payment deductions were allowed in those 2 years to University Properties, Inc., while no similar deductions were granted when valuing appellant's leasehold and improvements; (3) the Olympic Hotel and University Properties, Inc., were assessed in a substantially different manner than was appellant during assessment years 1963–67; (4) the county did not preserve the record which might explain valuation techniques utilized for the Olympic Hotel and University Properties, Inc., for assessment years 1963–67.

I also agree property tax assessments and underlying valuations are presumed valid. Thus, the appellant has the burden to establish, by clear and convincing evidence, that the assessor's valuations either were fraudulently, arbitrarily, or capriciously made or violate some constitutional provision. Here, appellant simply has not satisfied its burden for assessment years 1963–67.

Appellant points to no substantive evidence that establishes either that the assessor's valuations were fraudulently, arbitrarily, or capriciously made, or that they violate some constitutional provision. Indeed, even the majority opinion points to no such evidence. In the absence of such proof, appellant has neither sustained its heavy burden of proof nor met the rebuttable presumption of validity which attaches to property tax assessments and valuations. *Baker v. Lake City Sewer Dist.,* 30 Wn.2d 510, 191 P.2d 844 (1948); *School Dist. 88 v. Morgan,* 147 Wash. 321, 266 P. 150 (1928). Thus, I cannot agree that "the trial court placed too great an emphasis upon the presumption of proper assessment" thereby committing error.

The majority seeks to excuse appellant's failure of proof by pointing to the county's failure to preserve and produce records which *might* explain valuation techniques utilized

during assessment years 1963–67. But, mere failure to preserve such records, standing alone, is not a substitute for the substantive evidence necessary to meet appellant's burden of proof, and neither appellant nor the majority directly so contend.

Yet, the majority and appellant take the position that:

where relevant evidence which would properly be a part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation, the *only inference* which the finder of fact may draw is that such evidence would be unfavorable to him [the county] . . .

. . . *the only inference which may be drawn* is unfavorable to the contention of the respondents [the county] that . . . discriminatory techniques were not in fact employed.

(Brackets and italics mine.) Here the majority treats failure to preserve and produce documents as creating a *mandatory* inference that the contents of the missing documents, if produced, would be unfavorable to the county and would also establish the fact of discriminatory techniques. In this circuitous fashion, the majority seeks to create the missing substantive evidence and thus finds appellant to have satisfied its burden of proof. Support for such an unusual "triple–play" is sought in *British Columbia Breweries (1918) Ltd. v. King County,* 17 Wn.2d 437, 135 P.2d 870 (1943), and its progeny.

I agree with the majority that unexplained failure to preserve and thus produce relevant records in one's possession may create an unfavorable *inference* rather than an unfavorable presumption. The majority has correctly characterized the evidentiary function served by failure to preserve and produce records thus clarifying some of the confusion generated by *British Columbia Breweries.* In fact, most authorities agree presumptions and inferences are entirely different. 1 S. Gard, *Jones on Evidence* § 3:2, at 129 (6th ed. 1972); 9 J. Wigmore, *Evidence* § 2491 (3d ed. 1940); 31A C.J.S. *Evidence* § 115, at 198 (1964). A presumption arises from the high degree of probative value stemming from an

established factual basis and is *mandatory* until better evidence rebuts it. *Kay v. Occidental Life Ins. Co.,* 28 Wn.2d 300, 183 P.2d 181 (1947); *State v. Jukich,* 135 Wash. 682, 239 P. 207 (1925); 1 S. Gard, *Jones on Evidence* §§ 3:1, 3:2, at 125–30; 9 J. Wigmore, *Evidence* § 2491, at 286–93. An example is the rebuttable presumption of validity attaching to the official acts found in this case. *Pierce v. Lake Stevens School Dist. 4,* 84 Wn.2d 772, 529 P.2d 810 (1974); *see Rosso v. State Personnel Bd.,* 68 Wn.2d 16, 411 P.2d 138 (1966); *State ex rel. Longview Fire Fighters Local 828, I.A.F.F. v. Longview,* 65 Wn.2d 568, 399 P.2d 1 (1965); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 343, at 807 (2d ed. 1972). On the other hand, an inference merely may arise as a logical deduction from relevant evidence. Unlike presumptions, inferences do not affect either party's duty to produce evidence. J. Thayer, *Preliminary Treatise on Evidence* 336–39 (1898); 9 J. Wigmore, *Evidence* § 2491, at 288. Further, no rule of law attaches to an inference; the trier of fact may give it whatever force or weight it thinks best, just as the factfinder may do with other evidence. 9 J. Wigmore, *Evidence* § 2491, at 288; 31A C.J.S. *Evidence* § 115, at 198. Thus, inferences are better considered from the standpoint of relevance the same as other evidence. 1 S. Gard, *Jones on Evidence* § 3:2, at 127–30; 9 J. Wigmore, *Evidence* § 2491, at 288; *see also* 31A C.J.S. *Evidence* § 115, at 198.

While I agree respondent's unexplained failure to preserve or produce documents may permit an unfavorable inference, appellant has not produced sufficient evidence to make the inference relevant. The unfavorable inference which may arise from the destruction of, or failure to preserve, evidence is only available if the destruction has been *wilful, deliberate,* or *done with* some *evil intent. Walker v. Herke,* 20 Wn.2d 239, 147 P.2d 255 (1944); 1 S. Gard, *Jones on Evidence* § 3:90, at 319; 29 Am. Jur. 2d *Evidence* § 177, at 220–21 (1967); 31A C.J.S. *Evidence* § 153, at 389–90. Even the unfavorable inference which may arise from the possessor's failure to *produce* evidence is not available if

the evidence has been *accidentally destroyed or lost.* 1 S. Gard, *Jones on Evidence* § 3:93, at 329; 31A C.J.S. § 156(2), at 402. Here, neither inference is appropriate. There is no showing either that the destruction was wilful, deliberate or done with evil intent or that the attendant failure to produce arose other than from accidental destruction or mere loss. The most appellant has shown is that no one knows *what* happened to the assessor's records. Appellant merely *implies* that the failure to preserve must have been done wrongfully. This is pure speculation which may not be substituted for substantive proof. The absence of substantive evidence renders the unfavorable inferences unavailable.

The majority next treats the inference as *mandatory.* I disagree with this evidentiary maneuver for two reasons. First, *British Columbia Breweries* at page 455 twice uses the expression "the *only* inference which may be drawn" (italics mine). But, careful review of the entire text plus review of the cited authorities and their later editions makes clear that the inference is *not* mandatory. Rather, it is *permissive* only. The trier of fact *may* draw the inference but is *not required to do so.* 1 S. Gard, *Jones on Evidence* § 3:91, at 324, § 3:93, at 327; 31A C.J.S. § 156(1), at 398; Annot., 70 A.L.R. 1326 (1931). Thus, even if the trier of fact here was permitted to draw an unfavorable *inference,* it chose not to do so. Consequently, the rebuttable *presumption* that assessments are valid was not negated.

I also disagree with the majority's assumption that the inference would specifically have been "unfavorable to the contention of the respondents [county] that such discriminatory techniques were not *in fact* employed." (Brackets and italics mine.) *British Columbia Breweries* does not support this position. In fact, we said at page 455:

> The rule is that the only inference which may be drawn by the trier of the fact is that
> ". . . Evidence of such conduct is *persuasive rather than probative and cannot be invoked as substantive proof of any facts essential to the case of the opponent.*

The rule has been stated that the presumption [more properly denominated a permissive inference] *will not supply a missing link in an adversary's case and cannot be treated as independent evidence of a fact otherwise unproved.* It has been stated that the presumption [more properly denominated a permissive inference] arising from the nonproduction of evidence does not relieve the other party from the burden of proving his case."

(Italics mine.)

Neither can the inference relied on here be substituted for substantive proof of discriminatory techniques, nor can it relieve the appellant of the obligation of proving its case. *Walker v. Herke, supra.*

The inference merely discounts the credibility of the withholding party's claim. *Walker v. Herke, supra* at 249–51; 2 J. Wigmore, *Evidence* § 278(2), at 120; 1 S. Gard, *Jones on Evidence* § 3:90, at 321, § 3:91, at 325, § 3:93, at 329; 31A C.J.S. 156(1), at 399; 70 A.L.R. 1326. It does not substitute for substantive proof of any fact much less take the place of proof of a fact essential to the case of the party invoking it. *Walker v. Herke, supra;* 1 S. Gard, *Jones on Evidence* § 3:93, at 329; 31A C.J.S. § 152, at 388, § 156(1), at 398. Further, it does not supply a missing link in the proponent's case because it is not independent evidence of any fact otherwise unproved. 29 Am. Jur. 2d § 178, at 223; 31A C.J.S. § 152, at 388, § 156(1), at 398.

The inference permits the trier of fact to infer that the missing documents would be unfavorable to the claim of the county. But it does not permit the further inference that, if produced, the evidence would establish any specific underlying unfavorable facts. 1 S. Gard, *Jones on Evidence* § 3:90, at 320–21, § 3:91, at 325, § 3:93, at 329; 29 Am. Jur. 2d § 179, at 224. Nor does it constitute proof of the contents or nature of the documents which it is claimed would have been shown on production. 31A C.J.S. § 156(1), at 398–99. The inference merely diminishes the force of the spoliator's existing evidence or enhances the probative value of that actually produced by his opponent. *Olsson v.*

*Hansen,* 50 Wn.2d 199, 310 P.2d 251 (1957); 31A C.J.S. § 153, at 389–90, § 156(1), at 390, § 152, at 388.

In any event appellant must still establish a prima facie case. *Walker v. Herke, supra;* 1 S. Gard, *Jones on Evidence* § 3:93, at 329; 29 Am. Jur. 2d § 177, at 221; 31A C.J.S. § 152, at 388; 70 A.L.R. 1326. Here, appellant has produced *no substantive evidence* and has established *no prima facie case* for assessment years 1963–67. Thus, there is nothing to which the inference could attach. Since the inference does not supply the crucial missing link in appellant's case, and since it is not independent evidence of any fact and is neither affirmative nor substantive proof of the content or nature of the missing paper, appellant has failed to sustain its burden of proving by clear and convincing evidence that the challenged valuations and assessments for assessment years 1963–67 are illegal.

For this reason, the trial court having been affirmed on all other points, it should be affirmed in full.