Forrest, J.
—Carl Giles appeals the superior court decision affirming the Washington Horse Racing Commission's (Commission) affirmance of the disqualification of Giles's racehorse and redistribution of the purse by the racing stewards. We affirm.
Carl Giles is the owner-trainer of a horse that finished second in the ninth race at Longacres racetrack on August 11, 1984. The horse was tested for the presence of prohibited medications immediately after the race. Analysis of the horse's urine sample revealed it had raced with a prohibited drug in its body. At a hearing on August 19, 1984, the Board of Stewards disqualified the horse pursuant to WAC 260-70-021 for racing with a prohibited drug in its system.
Giles appealed to the Commission on August 20, 1984. After a hearing, the Commission upheld the ruling of the Board of Stewards. On appeal, the trial judge remanded the case to the Commission for consideration of whether a rational basis existed for the rule prohibiting certain medications in 2-year-olds that are permitted in older race horses. On remand, the Commission affirmed the legality of WAC 260-70-021. Giles appealed to superior court a second time. The court affirmed the Commission's order in all aspects on November 13, 1987.
 Giles makes numerous assignments of error, considered here in turn. First, he alleges the Commission erred by not applying criminal law and principles to its administrative hearing. An administrative hearing is a civil proceeding. The hearing provided is calculated to satisfy an aggrieved party's due process rights without necessarily requiring the full procedural safeguards warranted in a criminal trial. In re Deming, 108 Wn.2d 82, 736 P.2d 639 (1987); Christensen v. Terrell, 51 Wn. App. 621, 754 P.2d 1009 (1988). Furthermore, a court will review a claimed error only when supported by argument and citations to legal authority, which Giles has failed to do. BC Tire Corp. v. GTE Directories Corp., 46 Wn. App. 351, 355, 730 P.2d 726 (1986), review denied, 108 Wn.2d 1013 (1987); RAP 10.3(a)(5).
*934 Second, Giles claims the Commission erred by not dismissing the case because the State destroyed his horse's blood sample without testing it.
At the conclusion of the race, a blood and a urine sample were taken from Giles's horse. The blood sample was destroyed by the testing laboratory when phenylbutazone, a prohibited medication, was found in the urine sample. Giles relies upon State v. Vaster, 99 Wn.2d 44, 659 P.2d 528 (1983), to argue the case must be dismissed because potentially material evidence was destroyed. In Vaster, the court said that when the government destroys evidence which may have been material, the trier of fact must look to the reasonable possibility that the destroyed evidence was material and favorable to the defendant. Vaster, at 50.
No Washington court has yet applied the Vaster rule to administrative proceedings. Although application of such rule may sometimes be appropriate in civil proceedings, Vaster still requires the defendant to establish that the missing evidence had a reasonable possibility of enabling him to present a defense. Vaster, at 52. Giles has not established the "reasonable possibility" that preservation of the blood sample would have been exculpatory. Furthermore, the horse's urine test was mandatory under WAC 260-70-040. Taking a blood sample, in this case, was optional. It is extremely probable such evidence would have been cumulative. Nothing in the record suggests otherwise.
Pier 67, Inc. v. King Cy., 89 Wn.2d 379, 573 P.2d 2 (1977) does not require a contrary result. That case recognizes the following long-standing rule:
[W]here relevant evidence which would properly be a part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation, the only inference which the finder of fact may draw is that such evidence would be unfavorable to him.
Pier 67, at 385-86. In Pier 67, the loss or destruction of evidence occurred during pendency of the litigation. It was the only evidence which could establish certain essential *935 facts. Here, however, the mandatory urine sample was preserved. Only the optional blood sample was destroyed, in accordance with routine laboratory procedure, after the urine test was found to be positive. Even if a negative inference were drawn due to the destroyed evidence, it would not have exculpated Giles.
Third, Giles claims the Commission erred by not dismissing the case since he received improper notice. He asserts his due process rights were violated because the notice of hearing provided by the Commission mistakenly said "a blood sample," rather than a urine sample, was tested. However, Giles knew from the stewards' meeting, from the laboratory test reports, and from correspondence with counsel that his horse's urine had been tested. He also rejected an offer of continuance during the Commission hearing. This assignment of error is without merit and approaches the frivolous.
Fourth, Giles alleges the Commission erred by admitting the urine sample into evidence because the chain of custody was insufficiently established. The standard for admission of evidence in agency proceedings is set forth in the administrative procedure act, RCW 34.04.100(1):
Agencies, or their authorized agents, may admit and give probative effect to evidence which possesses probative value commonly accepted by reasonably prudent men in the conduct of their affairs. They shall give effect to the rules of privilege recognized by law. They may exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence.
This standard is reiterated in WAC 260-08-520, which reads:
Subject to the other provisions of these rules, all relevant evidence is admissible which, in the opinion of the officer conducting the hearing, is the best evidence reasonably obtainable, having due regard for its necessity, availability and trustworthiness. In passing upon the admissibility of evidence, the officer conducting the hearing shall give consideration to, but shall not be bound to follow, the rules of evidence governing civil proceedings, *936 in matters not involving trial by jury, in the superior court of the state of Washington.
We previously rejected appellant's position that strict criminal due process standards should prevail in an administrative hearing. The Commission properly exercised its wide discretion when receiving evidence as to the horse's urine sample.
Indeed, the thorough procedures followed during collection and testing of urine samples establish a solid chain of custody. The test barn where samples are taken is a restricted area. The sample from Giles's horse was collected under the supervision of the state veterinarian, Dr. Schransky. It was identified and its correctness confirmed by her the day the sample was taken. She initialed the card identifying the urine sample after her review. The card that accompanied the urine sample included the vital characteristics of the horse and was signed by Giles's representative. She also signed the test barn veterinarian's report.
Testimony was also offered by the director of the racing laboratory, Ms. Davais. She authored the urinalysis report from Northwest Testing Laboratories. She testified the samples from the Horse Racing Commission were sent to her laboratory in a locked metal box, removed from the box, logged into the laboratory logbook according to tag number, assigned in-house laboratory numbers, then tested. This procedure ensured proper identification of urine samples.
Fifth, Giles challenges the constitutionality of former WAC 260-70-021(7), which prohibits certain medications in 2-year-olds which are permitted in older horses, on equal protection and due process grounds.
Former WAC 260-70-021(7) reads:
Notwithstanding any other provision of this rule, no two-year old horse shall carry in its body while participating in a race any medication, including medications defined in WAC 260-70-010(1) through (4) and 260-70-090(1) through (5). Vitamins are permitted, however. The finding of any medication prohibited herein in a two- *937 year old horse participating in a race shall disqualify the owner of such horse from participating in the purse distribution; and in addition the stewards may take any authorized action they may consider necessary to preserve the integrity of racing.
Giles alleges there is no rational basis for WAC 260-70-021. There being no claim that Giles falls within a suspect class, the challenged classification is given minimal scrutiny. Following Yakima Cy. Deputy Sheriffs Ass'n v. Board of Comm'rs, 92 Wn.2d 831, 601 P.2d 936 (1979), appeal dismissed, 446 U.S. 979 (1980), three questions must be asked. First, does the classification apply alike to all members within the designated class? The rule obviously applies equally to all owners of 2-year-old horses. Second, does some basis in reality exist for reasonably distinguishing between those within and without the designated class? The age of the horse is a clear distinguishing factor.
Finally, does the challenged classification have any rational relation to the purposes of the challenged statute? RCW 67.16 establishes the Washington State Horse Racing Commission as the governing and supervising body for horse racing in Washington, and specifically directs it "to prepare and promulgate a complete set of rules and regulations to govern the race meets in this state." RCW 67.16-.020. The appropriate medication for horses entered in races is clearly of legitimate concern to the Commission.
On remand from the trial judge the Commission conducted an extensive hearing as to the distinction made in former WAC 260-70-021(7) between 2-year-olds and older horses. There was conflicting testimony from the expert witnesses. It was, however, properly within the Commission's discretion to accept the opinion of certain experts and to affirm the legality of the rule. RCW 34.04.100(1). Appellant has not met his burden of demonstrating the Commission's decision should be reversed. Yakima County, at 835-36.
*938 Giles also states WAC 260-70-021 is unconstitutionally vague. This contention is totally without merit. The prohibited medications at issue here—phenylbutazone and oxyphenylbutazone—are specifically enumerated in WAC 260-70-090(1), which is incorporated in WAC 260-70-021 by reference. This regulation quite clearly and specifically provides an ascertainable standard to persons of reasonable intelligence. State v. Grisby, 97 Wn.2d 493, 647 P.2d 6 (1982), cert. denied, 457 U.S. 1211 (1983).
Sixth, Giles alleges the Commission lacked authority to change the finish order after his horse was disqualified. Such power is, however, well within the Commission's discretionary authority in regulating races. Former WAC 260-70-021(7). It would indeed be a strange rule that would allow a disqualified horse to stand as winner of a race.
Finally, the Commission requests this court to direct compliance with the trial court's order for attorney fees and costs. The judgment of the trial court is affirmed in full. Enforcement of the order for fees and costs remains the responsibility of the trial court.
Coleman, C.J., and Pekelis, J., concur.